# United States Court of Appeals
## For the First Circuit

No. 07-1218

ESSO STANDARD OIL CO. (PUERTO RICO),

Plaintiff, Appellee,

v.

CARLOS W. LÓPEZ-FREYTES, in his personal and
official capacities as President of the Puerto Rico
Environmental Quality Board; FLOR DEL VALLE-LÓPEZ, in her
official capacity as Associate Member of the Puerto Rico
Environmental Quality Board; ANGEL BERRÍOS-SILVESTRE, in his
official capacity as Associate Member of the Puerto Rico
Environmental Quality Board; NORMAN VELÁZQUEZ-TORRES, in his
official capacity as Attorney of the Puerto Rico
Environmental Quality Board,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Justo Arenas, U.S. Magistrate Judge]

Before

Torruella, Circuit Judge,
Baldock,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

Salvador J. Antonetti-Stutts, Solicitor General, Department of
Justice, with whom Luis José Torres-Asencio, Assistant Solicitor
General, Eduardo A. Vera-Ramírez, Eileen Landrón-Guardiola, Luis A.
Rodríguez-Muñoz, and Landrón & Vera, LLP were on brief, for
appellants.
    Charles G. Cole, with whom Alice E. Loughran, Steptoe &

---

[*] Of the Tenth Circuit, sitting by designation.

Johnson LLP, Lawrence P. Riff, Jason Levin, John F. Nevares, and John F. Nevares & Assoc., PSC were on brief, for appellee.

_____

April 10, 2008

_____

**TORRUELLA**, **Circuit Judge**.  This is an appeal from the district court's issuance of an order permanently enjoining the defendants -- several members and officials of the Puerto Rico Environmental Quality Board ("EQB") -- from imposing a $76 million fine on the plaintiff, Esso Standard Oil Company ("Esso").  On appeal, the defendants argue that the district court should have abstained from exercising jurisdiction pursuant to the Younger abstention doctrine and, in any event, the court erred in concluding that there existed bias necessitating the imposition of the injunction.  After careful consideration, we affirm the district court's order.

## I.  Background

This case comes to us on appeal for the second time.[1] Given that the background facts are outlined extensively in our prior opinion, see Esso Standard Oil Co. v. Cotto, 389 F.3d 212, 213-18 (1st Cir. 2004) ("Esso I"), we need not repeat them here in great detail.  In brief, the case involves an underground fuel storage system at a service station in Barranquitas, Puerto Rico. Beginning in 1979, Esso had leased storage tanks and other fuel supplies to the station and in 1991 replaced the entire underground storage system.  Between August 1998 and October 1999, the EQB issued three orders directing Esso to test the fuel storage system.

---

[1]  Between these two appeals, Esso filed for panel rehearing.  We denied the motion and directed Esso to renew its request for injunctive relief with the district court.

-3-

Those investigations revealed and recovered about 550 gallons of spilled fuel.

Despite Esso's efforts to comply with the EQB's directives, the EQB issued a show cause order on May 21, 2001, proposing a $76 million fine against Esso for its failure to notify the EQB upon initial discovery of the fuel leakage and its failure to timely investigate, clean up, and remedy the harm.[2]  In September 2002, the EQB initiated hearings on this proposed penalty against Esso.  The hearings were marked by contentious debates and allegations of severe bias.  See Esso I, 389 F.3d at 215.  Esso filed numerous motions, including two motions seeking dismissal of the proceedings.[3]

In March 2004, Esso filed suit in federal court, seeking a preliminary injunction to prevent the EQB from imposing the massive fine on the ground that the proceedings were so plagued by conflict and bias that they violated Esso's due process rights.

---

[2]  Pursuant to statute, all fines collected by the EQB are deposited into a discretionary fund administered by the EQB.  P.R. Laws Ann. tit. 12, § 1136(f).

[3]  Esso immediately filed an appeal in the Puerto Rico Court of Appeals seeking dismissal of the hearings on statute of limitations grounds.  The court dismissed the appeal, asserting that in the absence of a final judgment, it had no authority to review the appeal of an agency order.  Esso Standard Oil Co. v. Junta de Calidad Ambiental, Nos. OA-01-AG-26 & OA-99-AG-109, 2002 WL 1438761, at *4 (P.R. Cir. May 1, 2002) (citing P.R. Laws Ann. tit. 3, § 2172).  In November 2003, Esso moved the EQB Hearing Examiner for expedited recommendation of dismissal alleging constitutional due process violations.  Neither the Hearing Examiner nor the EQB Governing Board has ruled on the motion.

Although the district court made several findings of bias, it dismissed the case for lack of jurisdiction pursuant to the <u>Younger</u> abstention doctrine.  On appeal, we expressed serious concern with the undisputed evidence of structural and actual bias in the case. <u>Esso I</u>, 389 F.3d at 218-19.  We concluded, however, that despite this evidence of bias, federal intervention was inappropriate under the abstention exception recognized in <u>Gibson</u> v. <u>Berryhill</u>, 411 U.S. 564 (1973), because Esso had not yet demonstrated irreparable harm.  <u>Esso I</u>, 389 F.3d at 221-25.  Specifically, we found that Esso could seek interlocutory relief from the Puerto Rico courts,[4] and we affirmed the district court's decision to abstain.

### A.  Interlocutory Appeals

Soon after the issuance of our opinion, Esso filed a petition for interlocutory review with the Puerto Rico Court of Appeals, asserting jurisdiction pursuant to <u>MCS Insurer</u> and arguing that the EQB administrative proceedings are fatally biased and

---

[4]  In 2002, Esso had filed an interlocutory appeal before the Puerto Rico Court of Appeals alleging that the suit was barred by the statute of limitations.  The court denied the appeal on the basis of P.R. Laws Ann. tit. 3, § 2171, which requires a final order and exhaustion of administrative process before judicial review.  <u>See</u> <u>Esso I</u>, 389 F.3d at 223.  We noted, however, that an intervening decision by the Puerto Rico Supreme Court had cast doubt on that prior ruling: the Puerto Rico Supreme Court had recognized an exception to § 2172 for alleged constitutional violations that rose to the level of an "intense grievance" that was supported by "specific, well defined facts."  <u>Id.</u> at 224 (citing <u>Oficina de la Procuradora del Paciente</u> v. <u>Aseguradora MCS</u>, 2004 T.S.P.R. at ___, 162 D.P.R. at ___, 2004 WL 2212782 ("<u>MCS Insurer</u>")).  We concluded that "Esso's claim might well meet th[at] standard."  <u>Id.</u>

-5-

violate its due process rights.  The following day, the Puerto Rico Court of Appeals dismissed the appeal and denied the accompanying request to stay the EQB's administrative proceedings.  It rejected the contention that MCS Insurer created an exception to the statutory administrative exhaustion requirements applicable in this case: "We resolve that insofar as the administrative process has not concluded and the 'total denial' object of this appeal is not a final decision of the agency, but an 'implicit' interlocutory resolution, we are barred from addressing the same." Esso Standard Oil Co. v. Junta de Calidad Ambiental, Case No. OA-99-AG-26 & OA-99-AG-109, 2004 WL 3199104, at *5 (P.R. Cir. Dec. 3, 2004) ("Esso, P.R. Court of Appeals"); see also P.R. Laws Ann. tit. 3, § 2172. The appeal was dismissed for lack of jurisdiction.  Id.

Three days later, Esso petitioned for writ of certiorari to the Puerto Rico Supreme Court, asserting that the Puerto Rico Court of Appeals had erroneously declared that it lacked jurisdiction to review Esso's due process allegations.  The following day, the Puerto Rico Supreme Court summarily denied the requested writ, stating: "As to the petition for certiorari and the motion in aid of jurisdiction, [it is] denied at this stage of the proceedings."  Esso Standard Oil Co. v. P.R. Env't Quality Bd., Case No. CC-2004-1155 (P.R. Dec. 7, 2004) ("Esso, P.R. Supreme Court").

-6-

Esso then returned here and filed for panel rehearing, arguing that it was now able to demonstrate irreparable harm because the Supreme Court of Puerto Rico had held that interlocutory appeal was unavailable to Esso. Although we agreed that the intervening developments had a significant impact upon a determination of the appropriateness of federal intervention, we concluded that the appropriate procedure was for Esso to renew its request for a preliminary injunction in federal district court.

**B. Renewed Motion for Preliminary Injunction**

On February 4, 2005, Esso filed a renewed and unopposed motion for preliminary injunction in the district court. In accordance with our decision in Esso I, the district court focused on the issue of whether Esso was able to show irreparable harm in the absence of federal intervention. The court concluded that the denials by the Puerto Rico Court of Appeals and Supreme Court provided "unquestionable proof that as a matter of both fact and law, the only element preventing federal intervention in this case has been removed from the picture." Esso Standard Oil Co. v. López-Freytes, No. 03-2319 (D.P.R. Mar. 11, 2005) (order granting preliminary injunction). The court granted Esso's request for a preliminary injunction and ordered the defendants to show cause as to why the preliminary injunction should not be converted to a permanent injunction. The defendants opposed such a conversion on the ground that they had not received notice of the consolidation

-7-

of the preliminary injunction hearing and the trial on the merits and thus had not presented any witnesses or evidence. The district court concluded that it was premature to convert the preliminary injunction into a permanent injunction without giving the defendants an opportunity to controvert the allegations of bias.

Soon thereafter, Esso filed a motion for summary judgment, opposed by the defendants, contending that there were no disputed issues of material fact. In November 2006, the district court entered summary judgment for Esso and issued a permanent injunction. See Esso Standard Oil Co. v. López-Freytes, 467 F. Supp. 2d 156 (D.P.R. 2006). In a separate order, the court stated:

> [D]efendants are permanently enjoined from conducting any and all administrative hearings and proceedings against Esso related to the penalty provision of the order to show cause issued on May 21, 2001 in In re Esso Standard Oil Company, Case No. OA-99-TE-102. It is further ordered that the defendants are permanently enjoined from issuing any judgments or resolutions, final or interlocutory, in said matter, and from instituting, conducting and/or prosecuting any administrative penalty proceedings against Esso based on or arising from the facts and events described in said order to show cause.

Esso Standard Oil Co. v. López-Freytes, No. 03-2319 (D.P.R. Nov. 7, 2006) (order granting permanent injunction). Defendants appeal this order.

## II.  Discussion

The defendants make three separate challenges: (1) the district court was required to abstain pursuant to the Younger

-8-

doctrine; (2) the evidence does not support a finding of bias; and (3) the scope of the permanent injunction is impermissibly broad.

A district court's decision to grant a permanent injunction involves factual, legal, and discretionary components. We therefore apply different standards of review: questions of law are reviewed de novo and the scope of the injunction is reviewed for abuse of discretion. Aponte v. Calderón, 284 F.3d 184, 191 (1st Cir. 2002). In this case, the injunction was issued following a grant of summary judgment and, accordingly, we view the facts in the light most favorable to the nonmoving parties, drawing all reasonable inferences in their favor. See Ramírez-Carlo v. United States, 496 F.3d 41, 46 (1st Cir. 2007). Insofar as the threshold issue involves the application of the Younger abstention doctrine, this is a legal question that we review de novo. See Brooks v. N.H. Sup. Ct., 80 F.3d 633, 637 (1st Cir. 1996) ("[W]e must review de novo the essentially legal determination of whether the requirements for abstention have been met.").

### A. **Younger Abstention**

In the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings. See, e.g., Younger v. Harris, 401 U.S. 37 (1971); Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423 (1982). Although initially applied to state criminal actions, the

-9-

abstention doctrine has been extended to other proceedings that implicate important state interests, including the state-level, quasi-judicial, administrative proceeding at issue here. <u>See</u> <u>Maymó-Meléndez</u> v. <u>Alvarez-Ramírez</u>, 364 F.3d 27, 31 n.3 (1st Cir. 2004) (enumerating the various applications of the <u>Younger</u> doctrine). Generally, insofar as the state proceedings evince "no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." <u>Middlesex Co. Ethics Comm.</u>, 457 U.S. at 435. Extraordinary circumstances include those situations in which "core constitutional values are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate." <u>Maymó-Meléndez</u>, 364 F.3d at 37 (internal quotation marks omitted). Among those extraordinary circumstances are cases in which extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner. <u>Gibson</u> v. <u>Berryhill</u>, 411 U.S. at 577; <u>accord</u> <u>Kugler</u> v. <u>Helfant</u>, 421 U.S. 117, 125 n.4 (1975) (recognizing <u>Gibson</u> bias as an example of the "exceptional circumstances" which warrant federal intervention).

In our prior opinion, we held that this case "lies squarely within <u>Younger</u>'s domain" and that Esso had clearly established the presence of bias which raised the kind of concerns permitting interim federal intervention pursuant to <u>Gibson</u>. <u>Esso</u>

-10-

I, 389 F.3d at 219-20.  We rejected the argument that the eventual availability of judicial review at the conclusion of the administrative proceedings was sufficient to ameliorate any constitutional injury inflicted upon Esso because it is currently in the midst of those allegedly infirm proceedings.  Id., at 220-21 ("[T]he availability of judicial review of a final agency decision is insufficient to avoid the irreparable harm that inheres in the biased administrative proceeding itself.").  In the intervening time, nothing has altered those conclusions and we have neither occasion nor need to revisit those rulings.  See United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004) ("The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting Arizona v. California, 460 U.S. 605, 618 (1983))).

In the last appeal, we also concluded, however, that Esso was unable to demonstrate irreparable harm because of the availability of immediate interlocutory relief through the Puerto Rico courts.  Esso now returns to us with evidence that such relief is unavailable: Esso avers that it has sought, and been denied, interlocutory relief in the Puerto Rico Court of Appeals and the Puerto Rico Supreme Court.  We, therefore, revisit our analysis under Gibson with respect to the irreparable harm issue.

The defendants assert that Esso still fails to demonstrate irreparable harm because: (1) the Puerto Rico courts' denial of Esso's appeals was a merits determination, not jurisdictional; and (2) Esso is not without relief as it has several other options, such as filing for mandamus or submitting a new claim in Puerto Rico Superior Court. We find neither argument to be availing here.

With respect to the first argument, the defendants contend that the Puerto Rico Court of Appeals rejected Esso's petition for interlocutory appeal because Esso had failed to demonstrate that the alleged violations were still ongoing. In essence, the defendants argue that Esso was not denied the option of interlocutory review; rather, Esso failed on the merits. Given the clear language of the opinion of the Puerto Rico Court of Appeals, we cannot agree.

The day after Esso submitted its forty-four page petition for interlocutory review the court of appeals issued an opinion denying the request. The opinion expressly states that the basis for the denial was jurisdictional:

> We resolve that insofar as the administrative process has not concluded that the 'total denial' object of this appeal is not a final decision of the agency, but an 'implicit' interlocutory resolution, we are barred from addressing the same. Pursuant to the legal system prevailing in our jurisdiction, this appellate forum should not intervene, prematurely, in the administrative process . . . . On the basis of the foregoing, we

-12-

dismiss the appeal . . . for <u>lack of jurisdiction</u> and as premature.

<u>Esso, P.R. Court of Appeals</u>, 2004 WL 3199104, at *5. It is clear that the court denied the motion for interlocutory relief on the basis of jurisdiction; there is no discussion of any merits in the opinion. Furthermore, the one-line denial of certiorari by the Puerto Rico Supreme Court similarly provides no evidence that it contemplated the merits of this case.

The defendants also urge us to conclude that Esso has still failed to demonstrate irreparable harm because there are other avenues available, <u>i.e.,</u> mandamus relief or initiation of state action. In November 2003, during the course of the EQB hearings, Esso filed a motion for expedited recommendation of dismissal, alleging constitutional due process claims. At the time of this appeal, neither the Hearing Examiner nor the EQB Governing Board had ruled on the motion. The defendants contend that rather than interpret the failure to act as a denial and seek interlocutory review by the Puerto Rico Court of Appeals, Esso should have filed for mandamus relief to order the agency to rule on the motion.

We expressly discussed a similar scenario in our prior opinion. We noted the possibility that interlocutory relief might be precluded by EQB's failure to rule on Esso's motion to dismiss. In such an event, we observed that "we might take a different view of the applicability of the <u>Gibson</u> exception . . . . However,

-13-

general principles of administrative law provide that . . . an agency's failure to act on a pending matter is treated as a denial of the relief sought." Esso I, 389 F.3d at 224 n.12 (citing Hernández v. Reno, 238 F.3d 50, 55 (1st Cir. 2001)). Likewise, we reject the defendants' argument that Esso's failure to seek mandamus relief precludes review. Esso's motion to dismiss was filed in November 2003 and, four years later, the agency still had not issued a decision. Esso was entitled to treat the failure to act as a denial. See P.R. Laws Ann. tit. 3, § 2173 (waiving the exhaustion requirement "when it is useless to exhaust the administrative remedies due to an excessive delay in the procedures"). Furthermore, review of Puerto Rico law does not appear to indicate that mandamus is available in a case such as this one. See P.R. Laws Ann. tit. 12, § 1139 (2004) (recodified as P.R. Laws Ann. 12, § 8002m (2007)) (provision allowing mandamus relief only to order the EQB to comply with the environmental statute); cf. Nieves-Márquez v. Puerto Rico, 353 F.3d 108 (1st Cir. 2003) ("It is far from clear from the defendants' summary presentation, without briefing, that mandamus would be available in the Puerto Rico courts to enforce an administrative order.").

The defendants' argument that Esso should have initiated a proceeding in Puerto Rico Superior Court is equally unavailing. The underlying principle of the court-made Younger abstention doctrine is rooted in a sense of comity and respect for those state

proceedings already in progress. See, e.g., Rossi v. Gemma, 489 F.3d 26, 34 (1st Cir. 2007). Indeed, in Maymó-Meléndez, we focused the applicability of the Younger doctrine on whether the particular proceedings were in fact still "ongoing" during the break between trial and appellate review. 364 F.3d at 34-35 (deeming that a "proceeding [is] 'ongoing' for Younger purposes until the state appellate process [i]s complete" (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 607-11 (1975))). Thus, Younger precludes a litigant in a state administrative proceeding from circumventing review by a state court in favor of federal relief. There is no requirement, however, that a litigant file a new, independent claim in state court prior to obtaining federal relief. See Habich v. City of Dearborn, 331 F.3d 524, 531-32 (6th Cir. 2003) ("We are aware of no case in which a federal plaintiff is deemed to have the 'opportunity' to have his or her federal claim heard in a state proceeding solely because the plaintiff could have amended an existing complaint or filed a new complaint in state court.").

Given Esso's failed attempts to obtain interlocutory relief in this ongoing administrative proceeding, we conclude that Esso has clearly demonstrated the irreparable harm which it will suffer in the absence of federal intervention. Accordingly, we conclude that the district court properly found that the need for federal intervention in this case falls clearly within the abstention exception carved out by Gibson.

**B. Bias**

The merits of this case involve allegations that the defendants violated Esso's constitutional due process rights as a result of the bias infecting the penalty proceedings. The allegations of bias fall into three categories: (1) the statutory structure which provides that the proposed penalty of $76 million would go directly into an account administered by the EQB; (2) the procedures for the selection of and payment to Hearing Examiners; and (3) the prejudice resulting from the Puerto Rico Senate's premature conclusion that Esso had violated the environmental regulations and the accusation that the EQB had been too lax. The first two allegations raise structural concerns that create the appearance of bias in the proceedings; the third allegation raises concerns of actual bias. The district court concluded that the defendants had failed to raise any genuine issues of material fact as to the appearance of a biased adjudicative process.

**1. EQB Governing Board**

The EQB is an administrative body comprised of three members appointed for a four-year term by the Governor of Puerto Rico with the advice and consent of the Puerto Rico Senate. P.R. Laws Ann. tit. 12, § 1129(a). The agency is tasked with the responsibility of adopting and enforcing Puerto Rico's environmental statutes and regulations, and is empowered to impose sanctions and administrative fines on violators, id. at § 1136(c),

as well as issue orders mandating the cessation of harmful activities, id. at § 1131(22).  Those administrative fines -- the crux of this case -- are then deposited into the "Special Account of the Board on Environmental Quality."  Id. at § 1136(f), (k); § 1131(16)(A) ("All monies received by the [EQB] in the fulfillment of its duty to implement [environmental regulations] . . . shall be deposited in a special account to be known as the 'Environmental Quality Board Special Account.'").  That money is then "place[d] at the disposal of the [EQB] . . . through payment orders authorized or signed by the Chairperson of the [EQB]."  Id. at § 1131(16)(A).

Esso asserts that it was denied a fair hearing because of the EQB's structural bias.  Specifically, Esso contends that the EQB has an institutional interest in imposing hefty fines because the collected monies are deposited into an EQB Special Account over which the EQB has limitless discretion.  Moreover, in this case, the proposed fine -- $76 million -- is more than double the EQB's annual budget.  In response, the defendants attempt to focus the inquiry on the individual members of the EQB, rather than the agency as a whole; the EQB Governing Board members are salaried and thus have no personal pecuniary interest in the fines imposed and collected by the agency.

Not only is the defendants' argument utterly unsupported by the law, but we have already rejected it.  See Esso I, 389 F.3d at 219.  On last appeal, we expressly stated,

> [T]he adjudicative body stands to benefit financially from the proceeding because any fine imposed will flow directly to the EQB's budget. Although members of the EQB Governing Board may not stand to gain personally . . . a pecuniary interest need not be personal to compromise an adjudicator's neutrality.

Id. at 218-19. Although the law of the case doctrine has been refined over time and we have identified several instances in which reconsideration of a past decision may be appropriate, see Ellis v. United States, 313 F.3d 636, 647-48 (1st Cir. 2002); this is not such an instance. This court's prior rejection of the defendants' argument is neither "unreasonable [n]or obviously wrong." Id. at 648 & n.5.

Last time, we properly concluded that the bias stems from the potential financial benefit to the EQB's budget as a result of an imposed fine. Esso I, 389 F.3d at 219; cf. Ward v. Vill. of Monroeville, 409 U.S. 57, 59-60 (1972) (invalidating the mayor's court because a substantial portion of the village funds were comprised of the fines he imposed for traffic violations). In Ward, the Supreme Court expressed concerns that the funding structure would "offer a possible temptation to the average man" to the extent that there is a "situation in which an official perforce occupies two practically and seriously inconsistent positions, one partisan and the other judicial [and] necessarily involves a lack of due process of law." Ward, 409 U.S. at 60 (quoting Tumey v.

-18-

Ohio, 273 U.S. 510, 532, 534 (1927)).  This is not a situation in which the EQB Governing Board is so removed from the financial policy of the Special Account that such a presumption of bias is inapplicable.  Cf. Dugan v. Ohio, 277 U.S. 61 (1928).  Rather, this is a case in which the EQB has complete discretion over the usage of those funds which are supplied, at least in part, by fines which it imposes.  In this particular case, the possibility of temptation is undeniable and evident in the fact that the size of the proposed fine in this case is so unprecedented and extraordinarily large.  The $76 million proposed fine -- a sum twice the EQB's annual operating budget and 5,000 times greater than the largest fine ever imposed by the EQB -- only intensifies the appearance of bias infecting the proceedings.

### 2.  EQB Hearing Examiner

Hearing Examiners are independent contractors who sign a one-year contract for employment with the EQB and are paid a fixed hourly rate.  They preside over the administrative hearing and make recommendations to the Governing Board of the EQB as to whether a fine should be levied.  They are assigned cases pursuant to the discretion of the EQB; those cases include administrative investigative proceedings, quasi-judicial proceedings, and legislative proceedings.

The district court concluded that the contractual relationship between the EQB and the Hearing Examiners exhibited

-19-

structural bias on account of both the method by which the Hearing Examiners receive assignments and because of the particularities within the pay structure. We agree. Hearing Examiners are not protected from the pressures of political appointments and their employment is entirely dependent on the EQB's willingness to assign cases to them. Furthermore, the evidence on the record indicates that the Hearing Examiner's contract in this case provides an hourly salary rate with a set maximum number of hours for work. Notably, there is no provision for a minimum number of hours. Given that a Hearing Examiner's pay is entirely dependent upon the discretionary assignment of cases from the EQB, the examiner is vulnerable to the temptation to make recommendations favorable to the EQB.[5]

In addition to the pressure felt by the Hearing Examiners with respect to their case assignments from the EQB, we are particularly concerned by the evidence that they are paid out of the same Special Account into which the fines are deposited. The Hearing Examiner's contract states that "in the eventuality of there not existing or being assigned funds for the payment of contracted services[,] the contract shall be deemed rescinded without any further right to collect." While there is some question as to whether the Hearing Examiner may have an

---

[5]   Esso asserts that two prior Hearing Examiners were dismissed after various disagreements with the EQB regarding the proceedings against Esso.

independent, contractual right to challenge a nonpayment of his salary by the EQB, it is irrefutable that such a provision -- one that expressly links personal salary and the fund into which the fines are deposited -- creates the appearance of and an incentive for bias.[6]

### 3.  Puerto Rico Senate Report

The claim of bias is further substantiated by evidence that the Puerto Rico Senate improperly exerted pressure on the EQB with respect to the assessment of this penalty against Esso.[7] Specifically, the Puerto Rico Senate Commission on Agriculture, Natural Resources, and Energy issued a partial report in which it directed the Commission on Government Integrity to "identify those public officials [in the EQB] who permitted the slowness with which the gasoline spill was dealt with . . . and refer them to both the Department of Justice as well as to the Office of Government Ethics to determine whether any crime was committed or violation of the laws and regulations of the Commonwealth of Puerto Rico."  Partial

---

[6]  With respect to the Special Account, the defendants contend that the account's funds are not supplied solely on the basis of fines, but are also funded through the issuance of permits.  The defendants argue that this fact severely undercuts the conclusion that the hearing examiners are biased.  We are unpersuaded.  The defendants' argument does nothing to alter the funding structure of the Special Account nor does it negate the fact that in this case, the EQB proposed a fine of $76 million.

[7]  On appeal, the defendants make no challenge to the district court's findings regarding the impact of the Puerto Rico Senate report on the EQB's proceedings against Esso.

-21-

Report on S.R. 1047, at 14 (P.R. Senate July 10, 2003) (certified translation). This threat of criminal prosecution of EQB officials strongly suggests that the Senate was threatening the EQB and is therefore evidence of actual bias in the proceedings. See Pillsbury Co. v. F.T.C., 354 F.2d 952, 964 (5th Cir. 1966) (noting that a legislative body's "improper intrusion into the adjudicatory process" deprives "the right of private litigants to a fair trial and, equally important[ly] . . . their right to the appearance of impartiality, which cannot be maintained unless those who exercise the judicial function are free from powerful external influences" (citing In re Murchison, 349 U.S. 133, 136 (1955))). The fact that the appointment of EQB members requires Senate consent further intensifies the incentives felt by the EQB to impose an unduly heavy fine on Esso.

After review of the evidence submitted by the parties, we re-affirm our conclusion that there is a strong appearance of bias and, additionally, undisputed evidence of actual bias in these proceedings.

### C. Permanent Injunction

The issuance of a permanent injunction requires the application of a familiar four-step framework in which Esso, as the plaintiff:

> must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

-22-

(3) that, considering the balance of the hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest will not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 390 (2006).

As we have already discussed above, Esso has already succeeded in demonstrating that EQB's internal structure is severely biased and that continuation of the proceedings in such a fatally biased decisionmaking process violates its due process rights.[8] Likewise, we have already concluded that Esso faces irreparable harm in the absence of injunctive relief given the unavailability of avenues for interlocutory relief in the Puerto Rico courts. Thus, we move to the balancing of the harms and the inquiry into the public interest.

The district court issued the following permanent injunction:

> It is further ORDERED that the defendants are permanently enjoined from conducting any and all administrative hearings and proceedings against Esso related to the penalty provision of the order to show cause . . . . It is further ORDERED that the defendants are

---

[8] On appeal, the defendants also argue that the court is required to inquire into whether the process is still biased, given the intervening personnel changes. The defendants concede that this argument was not raised below. See Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998) ("[A]ppellants did not raise these contentions below, and they are thus foreclosed from unveiling them for the first time on appeal."). Moreover, given the allegations of structural bias, evidence of personnel substitution is insufficient to cure the constitutional infirmity. See Ward, 409 U.S. at 61.

-23-

permanently enjoined from issuing any judgments or resolutions, final or interlocutory, in said matter, and from instituting, conducting and/or prosecuting any administrative penalty proceedings against Esso based on or arising from the facts and events described in said order to show cause.

Esso Standard Oil Co. v. López-Freytes, No. 03-2319 (D.P.R. Nov. 7, 2006) (order granting permanent injunction).

In this case, the district court's injunction is tailored specifically to Esso: the injunction makes no mention of administrative actions against other persons or entities and, in fact, leaves unhampered the ongoing clean up efforts at the gas station itself. There is little to no harm wrought upon the agency or the public. The injunction takes aim only at the fine to be imposed upon Esso. The defendants do not challenge the narrow focus of the injunction itself, but argue that the injunction will have a "considerable impact . . . on general compliance with EQB environmental law policies in Puerto Rico." In essence, they contend that Esso's success in obtaining an injunction in this case will encourage other companies to do the same, and thereby severely weaken the power of the agency to enforce environmental regulations. They argue that the injunction imposed upon the penalty phase in this case has "effectively allowed the release of thousands of gallons of gasoline to the environment, potentially affecting the health of nearby residents and contaminating the

area's soil, as well as its ground waters, to go forever unpunished."

We think the defendants grossly exaggerate the impact of the injunction and ignore the seriousness of the bias plaguing these proceedings. This case involves evidence that the EQB's decisionmaking process with respect to Esso is constitutionally infirm. The serious harm inflicted upon Esso is not outweighed by the EQB's concern that this injunction may alter the perceived strength of the EQB's governance. It is clear from the district court's thoughtful opinion that the injunction was crafted to target the biased penalty proceedings against Esso. The injunction specifically exempted the remediation efforts and expressly stated that it applied only to the case at hand. We are unconvinced by the defendants assertions, and conclude that the district court did not abuse its discretion in issuing a permanent injunction.

Lastly, the defendants argue that an injunction should "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Califano v. Yamasaki, 442 U.S. 682, 702 (1979). They also contend that the scope of this injunction was overly broad because it lacks an express provision for termination of the injunction in the event that the EQB makes the required institutional changes to ensure a constitutional proceeding. We are unconvinced by this argument; the defendants exaggerate the permanence of the injunction. If the defendants are

-25-

able to cure the impermissible sources of bias, they are free to move the district court to modify or dissolve the permanent injunction. See Fed. R. Civ. P. 60(b)(5) (providing relief from a judgment order when "applying it prospectively is no longer equitable"); see also Mackin v. City of Boston, 969 F.2d 1273, 1276-77 (1st Cir. 1992) (observing that with respect to those "decrees which were initially established to bring about needed institutional reforms . . . [the] intrusion by a federal court into the affairs of local government should . . . not be allowed to continue after the violation has abated and its pernicious effects have been cured"). It seems clear that the district court tailored an injunction specifically to Esso and in response to the volume of evidence exhibiting unconstitutional bias in the penalty proceedings against Esso. The injunction leaves the EQB free to continue its important remediation work and to continue pursuing claims against other violators. Upon evidence that the constitutional infirmities have been cured, the EQB may move to amend the injunction which removes the EQB's concerns that Esso is somehow permanently beyond the reach of its administrative oversight.

### III.  Conclusion

For the reasons stated above, the judgment of the district court is affirmed.

**Affirmed**.

-26-