# United States Court of Appeals
## For the First Circuit

No. 11-1180

ROLANDO JIMENEZ,

Plaintiff, Appellant,

v.

MARK CONRAD, DORIS DOTTRIDGE, CANDACE KOCHIN, LATICIA MUNOZ,
PAMELA LOMBARDINI, and THOMAS MERIGAN,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Stahl, Circuit Judge.

Thomas More Dickinson, with whom Law Office of Thomas M.
Dickinson was on brief, for appellant.
Jennifer L. Sullivan, Assistant Attorney General, with whom
Martha Coakley, Attorney General, was on brief, for appellees.

May 2, 2012

---

[*]     The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** In 1982, a Massachusetts jury found Rolando Jimenez guilty of the parolable offense of second degree murder for killing a police officer, simultaneously acquitting him of murder in the first degree, conviction of which would have carried no possibility of parole. The Massachusetts Parole Board denied his parole applications in 1999, 2004, and 2009, and he then brought this action under 42 U.S.C. § 1983 for declaratory and injunctive relief to rectify claimed violations of rights to due process and equal protection guaranteed by the Fourteenth Amendment, as well as infringements of guarantees under the Commonwealth's counterparts to the federal provisions, as set out in pendant claims. The defendants are the six members of the Board, named in their official capacities, each of whom voted to deny parole.[1] The District Court granted their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The trial judge found specific relief barred by § 1983's prohibition of injunctions against "judicial" officers. As to declaratory relief, the judge held that no federal due process or equal protection claim was stated and dismissed the state claims in part because of the disposition of the federal ones. On de novo review, Schatz v. Republican State Leadership Comm., 669 F.3d 50,

---

[1] No change in Board membership since institution of this suit is reflected in the case's caption.

55 (1st Cir. 2012), we affirm because Jimenez has stated no federal claim on which relief may be granted.

Due process of law is said to have been denied, first, on the ground that the board is so far biased against Jimenez because his victim was a police officer that he has been deprived of a fair consideration by impartial officers. See Esso Standard Oil Co. v. López-Freytes, 522 F.3d 136, 145-48 (1st Cir. 2008). The claim fails because the due process guarantee protects only against deprivations of life, liberty, or property, and the law has been settled for over thirty years that a convict has no liberty interest in being paroled unless the statute providing eligibility to seek parole is so phrased as to create a positive entitlement if statutory conditions are met. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1 (1979). The Massachusetts statute raises no such expectation. It provides that no matter how good an applicant's prison conduct may have been, parole shall be granted "only if" the board is of the "opinion" that there is a "reasonable probability" that the prisoner will not violate the law if granted a release, which itself must not be incompatible with the welfare of society. Mass. Gen. Laws ch. 127, § 130. As is obvious from the language, this negatively phrased statute creates no entitlement, Lanier v. Mass. Parole Bd., 489 N.E.2d 670, 671 (Mass. 1986), as this Court has recognized, Lanier v. Fair, 876 F.2d 243, 251 n.10 (1st Cir. 1989).

-3-

Nor do we see any possibility of a substantive due process claim in the complaint. For reasons explained in analyzing the equal protection issue below, there is nothing arbitrary, shocking, or even outside the scope of reasonable judgment, see County of Sacramento v. Lewis, 523 U.S. 833, 845-847 (1998), in allowing a parole board wide enough discretion to reflect the specific interests of law enforcement.

We likewise see no due process claim stated on the theory that the clause incorporates certain enumerated guarantees of the Bill of Rights. Jimenez did not expressly plead that in the complaint, and his closest pass at such an issue is an argument never articulated "face up," in the district court, Iverson v. City of Boston, 452 F.3d 94, 102 (1st Cir. 2006), that the Board's reported refusal to grant parole is in derogation of his Sixth Amendment right to jury trial, which in his case resulted in the parolable second degree murder conviction. We think the Commonwealth soundly argues that the theory of infringement of the jury right is unpreserved, see id., but in any event, we would see no merit in it. There is no basis in the allegations for construing his claim as one that he has been denied parole because he exercised his right to trial by jury; his claim is that he is being unfairly treated because of the identity of his victim, and that would be the same whether trial had been by jury or judge.

Finally, we consider an argument that Jimenez does not assign to one particular due process category or another, but seems to stand in the borderland of procedure and substance: that a prior, unsuccessful petition for new trial 24 years after conviction (claiming that the evidence supported only manslaughter) was considered as a subject of "concern" and erroneously treated as a reason for denying parole.  He makes this argument on analogy with North Carolina v. Pearce, 395 U.S. 711 (1969) (mere fact of appeal and new trial cannot justify higher sentence after retrial); United States v. Jackson, 390 U.S. 570 (1968) (Congress may not condition possibility of non-capital sentence on waiver of jury trial); Griffin v. California, 380 U.S. 609 (1965) (government may not comment unfavorably on defendant's silence at trial); and a related case of this Court, Worcester v. Comm'r, 370 F.2d 713 (1st Cir. 1966) (court may not offer lesser sentence conditioned on waiver of appeal).

Leaving aside the fact that only one out of six board members is said to have held the new trial request against him, the closest Jimenez comes to support in the cited authority is Pearce. There, it was clear from the record in one of the consolidated cases that a higher sentence after a second trial was retaliation for success in getting the retrial, and in the other case the higher sentence was not justified by any reference to facts occurring after the first trial.  Here, Jimenez seems to say, the

-5-

Delphic statement of concern about the new trial attempt was likewise unexplained and should be treated as illegitimate on analogy with the <u>Pearce</u> line of cases.

We do not think the facts here bear analogy to <u>Pearce</u>, however. Although it is quite true that the Board member's comment was not accompanied by any discussion showing the legitimacy of "concern" about the new trial attempt, we think it may be fairly understood as reflecting a reason that the complaint alleges to have been spelled out in explaining a prior parole denial: that Jimenez had not come to terms with the proven facts of his own conduct, that is, that he did not accept responsibility for the crime that the jury verdict showed he had committed. Jimenez's apparently meritless attempt to relitigate his guilt down to manslaughter could be seen as a further refusal to face the facts the jury had found. This is a reasonable consideration, addressed every day by courts in calculating criminal sentences, and having a bearing on the chance of recidivism that the Massachusetts parole statute required the Board to address. Therefore, although a successful attempt to obtain a new trial could not be held against him consistently with due process, alleging consideration of an unsuccessful effort by a prisoner previously found wanting in facing up to the reality of his crime does not state a plausible claim of illegitimate, unfair administrative reasoning. <u>See</u> <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 555-57 (2007).

That leaves the equal protection claim, and as to that we think the allegations at least raise the specter of pretextual reasoning by the Board that, standing alone, makes one suspect that the Board is placing Jimenez in a category it is reluctant to disclose. Jimenez has pleaded some specific examples of paroled second degree murder convicts with worse disciplinary records than his own, which are enough to raise questions about the Board's candor if the allegations are true about the Board's reliance on his own less serious prison misconduct in denying prior parole requests.

We nonetheless think that it is otherwise clear that the complaint is inadequate to state an equal protection violation. The claim here is not that pretext equals a denial of equal protection but that a record of pretext, as well as the more straightforward indications of board members' thinking, are evidence that Jimenez is receiving less favorable parole treatment because his victim was a police officer. And that, if true, does not violate the Equal Protection Clause. A state may rationally take the position that a law enforcement officer's constant exposure to violence calls for a more powerful deterrent to homicidal behavior than the general laws of homicide provide. See generally Toledo v. Sánchez, 454 F.3d 24, 33 (1st Cir. 2006) (citing Heller v. Doe, 509 U.S. 312, 319 (1993)), cert. denied sub nom. Univ. of P.R. v. Sánchez, 549 U.S. 1301 (2007). Thus,

statutes imposing heavier penalties for harming an officer are not uncommon,[2] and Jimenez does not argue that they represent unconstitutional classifications.

In this instance, of course, the more onerous treatment is alleged to result from the administrative practice of a parole board, not from a legislative classification, but Jimenez's pleadings and briefs give us no reason to think that this should make any difference as a federal constitutional matter. The Board's extensive discretion has been noted, and nothing in its statutory authorization could give rise to any expectation on the part of a police officer's murderer that the Parole Board should ignore the law enforcement occupation of a victim. This is not to say that administrative discretion is the optimal mechanism for making the classification alleged here, but Massachusetts can choose to rely on administrative policymaking if it wishes to.

We recognize that Jimenez's response to this conclusion is that Massachusetts has not left the Board with authority to classify convicts like himself as categorically ineligible for parole for all time. Their victims may have been officers, but their crimes are second degree murder, which carries the opportunity for parole. He would thus argue on the authority of Greenholtz, 442 U.S. at 14-16, that he has at least stated a claim

---

[2] See, e.g., Del. Code Ann. tit. 11, § 636; N.H. Rev. Stat. Ann. § 651:6; Or. Rev. Stat. § 163.095; 18 Pa. Cons. Stat. § 3301.

-8-

for a declaration that he has a constitutional entitlement to serious consideration for parole sometime.  But we think the complaint falls short of factual allegations that reach the point of plausibility in claiming that the Board is following a policy of permanently barring parole to Jimenez because his victim was an officer, or to all such convicts.  While each of those conclusions is a possibility on the facts alleged, that is not enough.  See Bell Atl., 550 U.S. at 555-57.  In the absence of an announced policy of absolute ineligibility, stating such a claim would require more extensive reference to the Board's actions and the records of parole applicants than anything in the complaint.  And, of course, we mean to imply nothing about the proper result even of plausible allegations of categorical ineligibility, given the statutory parole structure in Massachusetts.

Because the complaint states no federal constitutional claim upon which relief could be granted, each federal claim was properly dismissed with prejudice, and the annexed state law claims were likewise dismissed, but without prejudice.

**Affirmed**.