**Dr. Miguel A. Echevarria RODRIGUEZ, Dr. Luis M. Rodriguez Mora, Dr. Milton D. Carrero Quinonez and Dr. Jose A. Nieves Torres, Plaintiffs,**

v.

**Anibal Acevedo VILA, Jorge Silva Puras and Rosa Perez Perdomo, Defendants.**

**Civil No. 07–1780 (DRD).**

United States District Court, D. Puerto Rico.

June 26, 2008.

Jose J. Gueits–Ortiz, Department of Justice of Puerto Rico, Jose Enrico Valenzuela–Alvarado, Department of Justice, Maraliz Vazquez–Marrero, Departamento de Justicia, San Juan, PR, for Defendants.

Ruben T. Nigaglioni, Antonio E. Valiente, Nigaglioni & Ferraiuoli, Law Offices PSC, Mirta E. Rodriguez–Mora, Latimer, Biaggi, Rachid & Godreau, Jose R. Conaway–Mediavilla, San Juan, PR, for Plaintiffs.

## ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before the Court is a *Second Request For A Temporary Restraining Order, Injunctive Relief And Memorandum In Support Thereof* filed by plaintiffs on January 29, 2008 (Docket No. 45). Attached to their request, plaintiffs enclosed a document in the Spanish language, signed by the Puerto Rico Secretary of Justice ("Secretary"), and filed on January 28, 2008, in the administrative proceeding pending before the Office of the Governor of Puerto Rico against plaintiffs herein. For the reasons set forth below, plaintiffs' request for the issuance of a temporary restraining order and preliminary injunctive relief (Docket No. 45), is denied, *albeit* without prejudice, based on *Younger* abstention as further explained herein.

On May 12, 2008, plaintiffs filed a *Motion Requesting Issuance Of A Temporary Restraining Order* (Docket No. 56). The Court entered an *Order To Show Cause* on May 13, 2008 (Docket No. 57). The record shows that, on May 13, 2008, defendants filed their *Memorandum Of Law In Opposition To Plaintiffs' Third Request For A Temporary Restraining Order And To Dismiss* (Docket No. 58). Plaintiffs' request for the issuance of a temporary restraining order (Docket No. 56) is denied, as the Court understands that the instant case mirrors the case of *Esso Standard Oil Co. v. Mujica Cotto, et al.*, 389 F.3d 212, 216–217 (1st Cir.2004) ("*Esso I*"), as plaintiffs voluntarily availed themselves to the state administrative remedies in a 42 U.S.C. § 1983 action raising then the Court's abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Court explains.[1]

### Factual and Procedural Background

On August 1, 2007, the United States filed an indictment in federal court against various dozen private practice physicians, and several administrative employees

---

1. Because the case of *Esso I, supra*, was followed by a second injunctive relief request, which was eventually decided by our circuit on April 30, 2008, *Esso Standard Oil Co. v. Lopez–Freytes, et al.*, 522 F.3d 136 (1st Cir. 2008) ("*Esso II*"), the Court then determined to prudently wait for the results of *Esso II*, as eventually determined by the First Circuit in *Esso II*, altering the initial *Younger* abstention outcome of the case.

and/or staff members of the Puerto Rico Board of Medical Examiners ("BME"). Several charges were alleged in the indictment, to wit: (a) conspiracy to improperly obtain "licenses to practice medicine in Puerto Rico by individuals that had fraudulently passed the Basic and/or Clinical skills parts of the revalidation (sic) [board] examinations of the Board of Medical Examiners of Puerto Rico, depriving the Board of the honest services of its employees and officials and causing the use of the United States mails in furtherance of the scheme;" (b) mail fraud; (c) false statements relating to invoices and documents as to payments by Medicare; (d) witness tampering; and, (e) forfeiture of property related to the Health Care offenses. *See USA v. Yolanda Rodriguez Torres, et al.*, Criminal No. 07–302(JAG), the *Second Superseding Indictment* (Docket No. 1104). The core of the indictment is the procedure followed by the members and/or staff members of the BME to issue a passing grade to applicants' physicians, which were allegedly illegally granted to applicants by insiders of the BME. The indictment also charges the private physicians's defendants with issuing false statements to Medicare for alleged services rendered through the use of a false license to practice medicine in Puerto Rico, which had been allegedly obtained illegally or improperly, or by any other devious means, with the intent to defraud the United States. The Court notes that there are other parallel indictments filed under separate case numbers, to wit: *USA v. Arcelio Torres–Martir, et al.*, Criminal No. 07–303(DRD); *USA v. Arcelio Torres–Martir, et al.*, Criminal No. 07–304(GAG).

On August 27, 2007, plaintiffs filed the instant 42 U.S.C. § 1983 proceeding in federal court triggered by the letter of July 12, 2007, issued by the Governor to four members of the BME, giving notice to said members of their removal from the BME, effective fifteen (15) days from the date of the letter, unless a request for an administrative hearing was timely filed within said term.[2] *See* Docket No. 37. The suspension of the BME members was triggered at least in part by the criminal indictments filed in federal court. In the instant case, plaintiffs allege a civil rights cause of action and 42 U.S.C. § 1983 based among other matters on a due process and equal protection claims under the United States Constitution.

The record shows that plaintiffs voluntarily consented to participate in the administrative hearings, although it appears that plaintiffs had second thoughts later after having filed the instant federal court proceeding. Notwithstanding, the administrative proceeding continued its course, and culminated with the report and recommendation rendered by the designated examiner to the Governor on May 5, 2008. *See* Docket No. 58, Exhibit No. 1. On May

---

**2.** Plaintiffs are undoubtedly entitled to a hearing by mandate of the U.S. Supreme Court entered since 1935 in the case of *Humphrey's Executioner v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), since they perform quasi-judicial functions. *See also P.R. Op. Sec. Just.* No. 07–277A of June 28, 2007, issued by the Puerto Rico Secretary of Justice, wherein the Secretary accepts that the members of the BME have among other functions, quasi-judicial functions. The quasi-judicial functions of the BME are established under Puerto Rico law by 20 L.P.R.A. § 34, which governs the authority delegated by the Puerto Rico Legislature to the BME to establish and supervise the licensing procedure of the medical profession, the continuing legal education, the license renovation procedure to practice medicine in Puerto Rico, amongst other duties; and, 20 L.P.R.A. § 35 which governs the functions of the secretary of the BME. *See also Williams v. United States*, 289 U.S. 553, 565–567, 53 S.Ct. 751, 77 L.Ed. 1372 (1933). *Santana v. Calderón*, 342 F.3d 18, 23–24 (1st Cir.2003); *De Salas v. Burgos*, 595 F.2d 81, 84 (1st Cir.1979).

9, 2008, the Governor then terminated plaintiffs' appointments as members of the BME, effective immediately, based upon the findings of fact and conclusions of law of the examiner (the BME plaintiffs had been previously suspended). *See Memorandum Of Law In Opposition To Plaintiffs' Third Request For A Temporary Restraining Order And To Dismiss,* Docket No. 58, Exhibit No. 1 (Examiner's Report), and Exhibit No. 2 (Governor's Final Resolution). As of this date, the appointments of new members to the BME have been confirmed by the Puerto Rico Senate. *See Motion Requesting Order To Take Judicial Notice Regarding Confirmation Of Appointees As Members Of The Medical Examining Board* (Docket No. 59).

### Applicable Law and Discussion

### A. The Board of Medical Examiners.

The creation of the Board of Medical Examiners to which plaintiffs were originally appointed is governed by 20 L.P.R.A §§ 31 *et seq.* Section 31 specifically provides that members will be appointed by the Governor of Puerto Rico "with the advice and consent of the Senate of Puerto Rico." Section 31 further provides that:

> When this Act takes effect, the Governor of Puerto Rico, by and with the advice and consent of the Senate of Puerto Rico, shall appoint a Board of Medical Examiners attached to the Department of Health's Office of Regulations and Licensing of Health Professionals, composed of nine (9) physicians. Initially, the members of the Board shall be appointed as follows: five (5) members for the term of five (5) years and four (4) for the term of four (4) years. The present incumbents shall continue in office until their term expires and the

Governor has appointed new incumbents in such a way that the staggered system provided herein prevails. The associations of medical professionals may submit candidates to the Governor to fill vacancies on the Board. Not more that four (4) physicians who are members of the Board shall be residents of the metropolitan area.

. . .

> Once he has been appointed, no member of the Board may be a stockholder or belong to the Board of Trustees or of Directors of any university, college or medical school. No member of the Board shall be appointed for more than two (2) consecutive terms.

. . .

> **The Governor of Puerto Rico may dismiss a member of the Board from office for negligence in the performance of his duties, gross negligence in the practice of his profession, upon conviction for a felony, or for the suspension, cancellation or revocation of his license, after due notice and hearing.** (Emphasis ours).

The statute that creates and establish the BME is clear as to the power delegated to the Governor to remove a member of the Board, at any time, provided that due notice and hearing was to be provided to any affected trustee BME member. The statute, however, is silent as to the procedure to be followed in said circumstances.[3] The Court refers to the Opinion of June 28, 2007, issued by the Secretary that specifically clarifies the proceeding to be followed when removing a member of the BME. *See P.R. Op. Sec. Just.* No. 07–277A of June 28, 2007. The Secretary states and recommends as follows:

---

**3.** The law does not authorize damages to be awarded to plaintiffs against the Governor of Puerto Rico, who is the exclusive person that enjoys the power by law to appoint, suspend or terminate any of the BME quasi-judicial officers.

Art. 1 of Public Law No. 22, *20 L.P.R.A. § 31.* (emphasis added). As to the statutory concept of "due notice and hearing," as we explain below, we conclude that at most it requires that a process analogous to that provided for career services employees be followed. That is, if said type of procedure is followed, the statutory requirement for due notice and hearing will have been automatically met.

To begin, it must be noted that after an exhaustive search we have not found, beyond the aforementioned statutory requirement of due notice and hearing, any legal or regulatory provisions that establish, in detail, the removal procedures for the members of the BME. However, we must point out that our Supreme Court has established minimum guarantees to be followed in the removal process of any public service career employee.[FN4] We will now discuss, in the form of analogy, said guarantees and their possible application to the removal proceeding for the members of the BME object of the opinion herein.

FN4. It is important to emphasize that we are in no way implying that the members of the BME are "career service employees." Such decision would have wide repercussions that are beyond the scope of this opinion. As a matter of fact, and as we will mention below, the members of the BME are considered "trust service employees" under the Personnel Act, pursuant to Section 9.1 of Public

Law No. 184, *3 L.P.R.A. § 1456.* Thus, it is clear that we are discussing case law related to the removal of public service career employees as an analogy, since we believe that if these minimum guarantees are applied, in their procedural sense, to the possible removal of a member of the BME (in the understanding, as mentioned before, that the limitations imposed by said law to such removal are constitutionally valid), **the statutory requirement of due notice and hearing will have been met, as well as any other possible requirements of a constitutional order.**

The Puerto Rico Supreme Court has provided, in the context of public service career employees, that prior to a removal it is necessary to provide the following guarantees: (1) written notification of the administrative charges against the employees; (2) a brief description of the evidence in the possession of the employer to prove such charges; (3) **an opportunity for the employee to state his version of the events, if he deems it convenient and appropriate, by holding an informal hearing.** *Marrero Caratini v. Rodríguez Rodríguez,* 138 D.P.R. 215, 222 (1995). **The notification must inform the employee of his right to an informal hearing.**[4] In addition the place and date of the informal hearing must be promptly notified (whether in the initial notification of charges or in a subsequent notification in response to a request for an informal hearing by the employee). Likewise, this initial notification must specifically include the charges against the employ-

**4.** This Court adds that the "informal hearing" alluded by the Secretary of Justice is known as a "pre-termination hearing" applicable to career employees both under local law and federal law. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Feliciano-Angulo v. Rivera–Cruz,* 858 F.2d 40, 44 (1st Cir.1988); *Acosta–Sepulveda v. Hernandez–Purcell,* 889 F.2d 9, 12 (1st Cir.1989). The doctrine set forth by *Cleveland Board of Education, supra* at page 545, 105 S.Ct. 1487, was adopted by the Puerto Rico Supreme Court in

the case of *William Torres Solano v. Puerto Rico Telephone Company,* 127 D.P.R. 499 (1990). *See also Oficina de la Procuradora del Paciente v. Aseguradora MCS, IPA 603, MCS Health Management Options, Inc.,* 163 D.P.R. 21 (2004); *Mercado Vega v. U.P.R.,* 128 D.P.R. 273 (1991); *First Federal Savings v. Asoc. de Condómines,* 114 D.P.R. 426 (1983); *Pastor Lozada v. Canals,* 101 P.R.R. 923, 101 D.P.R. 923 (1974). *See also Santana v. Calderón,* 342 F.3d at 23–24; *Báez–Cruz v. Municipality of Comerío,* 140 F.3d 24 (1st Cir.1998); *De Salas v. Burgos,* 595 F.2d at 84.

ee, so that he is in a position to defend himself, state his version of the facts, and state why he should not be removed. See *Unión Independiente de Empleados de la AEP v. AEP*, 146 D.P.R. 611, 612 (1998). As to the hearing, it must not be complex, long, or formal. See *Torres Solano v. PRTC*, 127 D.P.R. 499, 527 (1990); D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme* (1993).

Regarding the situation before us, we must mention that the members of the BME are trust service employees as per the provisions of the Personnel Act in effect, **because they are members of a board appointed by the Governor that can only be removed from their position for just cause.** See Sec. 9.1 of Public Law No. 184 of August 3, 2004, as amended, known as the "Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico," 3 L.P.R.A. § 1465. In addition, as we have mentioned before, Public Law No. 22 established that the Governor may remove a member of the BME for any of the grounds listed therein, after due notice and hearing. *See* Art. 1 of Public Law No. 22, 3 L.P.R.A. § 31.

Now then, given the absence of provisions establishing the details of the removal proceeding for members of the BME, it is our belief that, by analogy, a proceeding should be established containing the minimum procedural guarantees provided by Puerto Rico case law for the removal of career service employees, to wit, adequate notification of the charges against the employee, a brief description of the evidence proving such charges, and the right to request an informal hearing. As regards [to] the notification, it must be: in writing, state the charges against the official, and reiterate the employee's right to request an informal hearing. On the other hand, during the hearing, the member of the BME would have the opportunity to show why he should not be removed from his position. Finally, said hearing must be chaired by an official, employee, contractor, examiner, or other person designated by the Governor to preside over the hearing and recommend a decision regarding the removal proceeding. This would provide the **minimum necessary guarantees** to the members of the BME.

. . .

**After the preceding legal analysis, we may conclude that: (1) in the light of Public Law No. 22, the members of the BME have quasi legislative and quasi judicial duties; (2) the relationship between the Board of Medical Examiners and the Department of Health is incidental, even though the BME is a government body attached to the Department of Health, because the duties of the Department of Health in this context are limited, in general terms, to providing administrative and operational support to the BME; (3) the imposition of a statutory "just cause" requirement as grounds for the First Executive to remove members of the BME does not violate the constitutional powers of the First Executive to remove such public officials appointed by him; and (4) said removal proceeding must comply with minimum procedural guarantees.**

Finally, it is vitally important to state that an administrative procedure for the removal of a member of the BME is independent of any criminal investigation that the Department of Justice may have undertaken. We must point out that, at this time, the Department of Justice is not in a position to make any recommendation as to the specific merits

of the removal of any of the members of the BME, because the criminal investigation has not yet ended. Now then, neither the absence of a specific recommendation on its merits by the Department of Justice, nor the existence of a criminal investigation in process is an impediment for the Governor to designate an official, employee, contractor, examiner, or other person to begin an administrative investigation regarding any facts that may lead to the removal of a member of the BME, and should it determine it appropriate, to file the corresponding charges, hold an informal hearing, and recommend a course of action to the Governor. **Once the aforementioned procedure is completed, nothing can prevent the Governor from removing a member of the BME, should any of the grounds provided by law be established, independent of the criminal investigation procedures that may be taking place in the Department of Justice.**

Certainly, in some cases, the opening of an administrative investigation and the possible removal proceeding that it may lead to has the potential to affect the successful completion of a parallel criminal investigation regarding the same facts. However, in this case, in view of the particular facts known thus far and the public interest at stake, the Department of Justice would have no objection to the opening of an administrative investigation even if it leads to initiating a removal proceeding may begin before the parallel criminal investigation has ended, since we have determined that such criminal investigation will not be materially adversely affected, given the specific circumstances currently known. (Emphasis ours).

In sum, in the event the Governor considers the removal of one or more of the members of the BME, said member(s) is entitled to an administrative proceeding, with the same procedural and constitutional warranties afforded to a career employee, including a pre-termination informal hearing in nature, as acknowledged by the Secretary in his Opinion of June 28, 2007. Hence, if the member opts for the administrative proceeding, then the Governor may not render a final decision on the removal of the member until an administrative investigation is conducted, an administrative hearing is subsequently held by the examiner designated by the Governor, and a final report, including findings of fact and conclusions of law, is submitted to the Governor for his/her consideration. Each case to be entertained on a case-by-case basis, in compliance with the guaranties provided by the Puerto Rico Uniform Administrative Procedure Act, 3 L.P.R.A §§ 2102 *et seq.* ("UAPA"). The final decision to be rendered by the Governor is subject to judicial review under 3 L.P.R.A. § 2172.[5]

B. **Employee categories within the Personnel System of the Commonwealth of Puerto Rico.**

Notwithstanding the recommendation of the Secretary issued on June 28, 2007 cited above, it is pertinent to review the provisions of Public Law No. 184 also known, 3 L.P.R.A. § 1465, which outlines the employee categories. Section 1465 provides that there are two employee categories, to wit, career employees and confidential or trust employees.

There are two (2) employee categories within the personnel system: (1) Career employees.—Those employees who have been admitted into the public service in faithful compliance with the established by the body of laws in effect and which

5. The UAPA will be discussed in detail in a separate subtitle of this opinion.

applies to the recruitment and selection processes of the career service at the time of their appointment. Such employees are entitled to remain in the service pursuant to the provisions of § 1462e of this title. This category includes confidential employees.

Confidential [trust] employees are those who, even though they hold positions within the career service, perform functions that by their very nature affect or participate significantly in the formulation or implementation of public policy or who perform functions directly or indirectly connected with employer-employee relations which actually or potentially involve a conflict of interest are excluded from all the appropriate units, as provided in § 1451(b)(1) of this title, part of the Public Service Work Relations Act.

(2) Confidential [trust] employees.—The employees that substantially intervene or collaborate in the formulation of public policy, or those who directly advise or render direct services to the head of the agency, such as:

(a) Officials or employees appointed by the Governor, their personal secretaries and chauffeurs, as well as executive and administrative assistants who answer to them directly.

(b) Heads of agencies, their personal secretaries and chauffeurs, as well as executive and administrative assistants who answer to them directly.

(c) Deputy heads of agencies, their personal secretaries and chauffeurs.

(d) Regional directors of agencies.

(e) **Board or permanent commission members appointed by the Governor, and their respective personal secretaries.**

(f) **Members and staff of boards and commissions appointed by the Governor with a determinate period of effectiveness.**

(g) The staff of the Office of Former Governor Services.

**Confidential [trust] employees can be selected and removed at will. Likewise, those employees who, even though they are selected at will, are to be removed only for just cause by provision of law or those whose appointment is for a term predetermined by law, shall also be confidential employees.** (Emphasis ours).

 In the instant case, the Court finds that plaintiffs, as members of the BME, are confidential or trust employees, as designated by the Secretary in his opinion of June 28, 2007, as they are: (a) appointed by the Governor; (b) they "perform functions that by their very nature affect or participate significantly in the formulation or implementation of public policy;" and, (c) although "they are selected at will, are to be removed only for just cause by provision of law." 3 L.P.R.A. § 1465. Further, since the members of the BME have quasi-judicial functions, pursuant to federal law they are entitled to a hearing. *See Humphrey's Executioner v. United States,* 295 U.S. 602, 631–632, 55 S.Ct. 869, 79 L.Ed. 1611.

 Hence, according to the Secretary, as well as the provisions of the Puerto Rico personnel law, although the members of the BME are confidential or trust employees, they shall be treated as a career employee, at the time of their removal, and they are entitled to a hearing for a determination of just cause. *Humphrey's, supra.*

C. **Due Process of law under the Personnel Law of the Commonwealth of Puerto Rico, and the Commonwealth of Puerto Rico Uniform Administrative Procedure Act.**

A career employee is encouraged to resolve any employment dispute through an

informal procedure within the agency. The Puerto Rico Uniform Administrative Procedure Act ("UAPA"), 3 L.P.R.A. §§ 2101 *et seq.,* provides an administrative procedure applicable to all governmental employees with the sole purpose of protecting the employees' rights in an administrative forum. Section 2102 provides:

> It is hereby established that the public policy of the Commonwealth is to encourage the informal solution of administrative solution of administrative issues so that formal solution of the matters submitted to the agency will be unnecessary. The agencies shall establish the rules and procedures that will allow the informal solution of the matters submitted for their consideration without impairing the rights guaranteed by this chapter. **This section has the purpose of encouraging, without requiring or binding a party, to submit and resolve an issue through informal means.**
>
> The provisions of this chapter shall be construed liberally, thus guaranteeing that the administrative procedures shall be carried out in a speedy, fair and economical way that will ensure an equitable solution of the cases under the agency's consideration. (Emphasis ours).

Section 2151 governs the adjudicative proceedings. Section 2151(a) specifically provides:

> (a) When by provision of a law, rule, regulation or of this chapter, an agency must formally adjudicate a controversy, the proceedings shall be governed by this subchapter. Voluntary procedures for dispute resolution established by law or regulation shall not be included.
>
> . . .
>
> **The following rights shall be safeguarded in any formal adjudicatory procedure before an agency:**

> **(A) The right to timely notice of the charges or complaints or claims against one of the parties.**
>
> **(B) The right to introduce evidence.**
>
> **(C) The right to an impartial adjudication.**
>
> **(D) The right to have the decision based on the record of the case.** (Emphasis ours).

Section 2172 provides a right of judicial review. It provides in its relevant part:

> **Any party which is adversely affected by a final order or resolution of an agency and who has exhausted all of the remedies provided by the agency or by the corresponding administrative appellate body, may file a petition for review before the Circuit Court of Appeals, within a term of thirty (30) days from the date the copy of the notice of the order or final resolution was filed in the record of the case,** or from the applicable date of those provided in § 2165 of this title when the term to petition [for] judicial review has been interrupted by the timely filing of a motion to reconsider. . . .
>
> . . .
>
> An order or interlocutory decree of an agency, including those that are issued in procedures that are developed in stages, shall not be directly revisable. The interlocutory decree of the agency may be subject to a writ of error in the motion to review the order or final decision of the agency.
>
> **The judicial review provided herein shall be the exclusive proceeding to review t he merits of an administrative decision submitted under this chapter; whether adjudicative or informal in nature.** (Emphasis ours).

Section 2173 address the question of exhaustion of administrative remedies, and

when the exhaustion of administrative remedies may be waived:

> The court may exempt a petitioner from having to exhaust any or all of the administrative remedies provided in case such remedy is inadequate or that requiring its exhaustion would cause irreparable harm to t he petitioner and in the balance of interests it is not justified to exhaust such remedies, or when a substantive violation of constitutional rights is alleged, or when it is useless to exhaust the administrative remedies due to an excessive delay in the procedures, or **when it is a clear case of lack of agency jurisdiction, or when it is a strictly legal matter and administrative expertise is unnecessary.** (Emphasis ours).

 The Court therefore recognizes that, generally, a quasi-judicial officer is entitled to federal due process and equal protection. When the quasi-judicial officer is allegedly deprived of a constitutionally protected right, such as, substantially due process or equal protection and/or any other federal protected right, a claim under § 1983 may be filed without having to exhaust state administrative procedure, pursuant to the mandate of *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *McNeese v. Board of Education*, 373 U.S. 668, 671–673, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 500–501, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Board of Regents v. Roth*, 408 U.S. 564, 569–570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Hence, a quasi-judicial officer is entitled to substantive due process and/or equal protection, and may file a claim under 42 U.S.C. § 1983 without having to exhaust state administrative remedies. The doctrine, however, suffers a notable exception. The Court briefly explains.

 In *Esso Standard Oil Co. v. Mujica Cotto, et al.*, 389 F.3d 212, 216–217 (1st Cir.2004) ("*Esso I*"), the First Circuit affirmed the district court decision denying preliminary injunction based on the line of cases that followed *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The First Circuit held, affirming the district court, "that federal courts should not interject themselves into ongoing state adjudications, including administrative proceedings. *See id.; Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 623–27, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (extending *Younger* to some state administrative proceedings). This rule applies as long as the state forum provides an adequate opportunity to raise the petitioner's federal claims." *Esso I*, 389 F.3d at 216–217, citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Maymó–Meléndez v. Alvarez–Ramírez*, 364 F.3d 27, 35 (1st Cir.2004), *cert. denied*, 543 U.S. 872, 125 S.Ct. 110, 160 L.Ed.2d 120 (2004).

The Court in *Esso I* denied the injunctive relief and dismissed the case based on *Younger* abstention. Notwithstanding the dismissal in *Esso I*, the Court in *Esso II*,[6] "expressed serious concerns with the undisputed evidence of structural and actual bias in the case," describing the ultimate determination not to abstain based on *Younger* abstention, *Esso II*, 522 F.3d at 141. "We concluded, however, (in *Esso I*) that despite this evidence of bias, federal intervention was inappropriate under the abstention exception recognized in *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), because Esso had not yet demonstrated irreparable harm.

---

**6.** 522 F.3d at 140, see *fn. 1*.

....Esso could seek interlocutory relief from the Puerto Rico courts." *Id.* The instant case mirrors the above citation. This district court will dismiss without prejudice and stay its hands to later analyze if warranted potential "structural bias" causing that the case disengage *Younger* abstention, normally due to comity reasons, as held in *Esso II*, 522 F.3d at 147, as further explained below in this opinion.[7]

The Court abstains, at this stage of the proceedings, because plaintiffs have voluntarily engaged the wheels of administrative exhaustion. Hence, the general rule of *Younger* abstention applies, as explained in *Esso II*, 522 F.3d at 143. In *Esso II*, the Court held that:

> In the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings. *See, e.g., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Although initially applied to state criminal actions, the abstention doctrine has been extended to other proceedings that implicate important state interests, **including the state-level, quasi-judicial, administrative proceeding at issue here.** (Citations omitted). Generally, insofar as the state proceedings evince "no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." (Citations omitted). Extraordinary circumstances include those situations in

which **"core constitutional values are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate."** *Maymó–Meléndez,* 364 F.3d at 37 (internal quotation marks omitted). Among those extraordinary circumstances are cases in which extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner. *Gibson v. Berryhill,* 411 U.S. at 577, 93 S.Ct. 1689. (Emphasis ours).

This Court is mainly concerned with "structural bias," as opposed to extreme personal bias, as explained in this opinion pursuant to the dispositive case of *Esso II,* 522 F.3d at 147–148. The doctrine of *Younger* abstention originally applied simply because the petitioner having absolute recourse to a federal claim, voluntarily engaged the wheels of state administrative procedure before filing an action in federal court.

In *Esso I,* the Court explained that the district court reached its conclusion on the ground that *Esso I* failed to exhaust the state administrative remedies, as no fine had yet been imposed by the Puerto Rico Environmental Quality Board ("EQB"), or if one was eventually imposed. Moreover, the claimant in *Esso I* had the right of a judicial review before the Puerto Rico Court of Appeals, and eventually the Puerto Rico Supreme Court, where the claimant in *Esso I* could raise any constitutional concerns. In *Esso I,* similar to the case at bar, **the state administrative proceedings before the EQB were initiated before the filing of the federal suit in the district court.** In *Esso I,* none of the parties contested that the state administrative

---

7. In the third request for injunctive relief, plaintiffs made a veiled bias claim as to the examiner. Whether this claim reaches the threshold required under *Esso II* as a "structural bias" or "extreme personal bias" is not a matter to be decided at this time. *See* Docket No. 60, ¶¶ 10–13.

hearings were quasi-judicial in nature. The hearing officer at *Esso I* was, however, characterized as biased and/or "structural bias" when presiding the administrative hearings. *See also Esso II,* 522 F.3d 136. "*Younger*'s basic rule applies so long as the state proceedings provide an adequate opportunity for the complaining party to present its federal claims." *Esso I,* 389 F.3d at 218.

In *Esso I,* the Court discussed the application of 3 L.P.R.A. § 2173 which provides that the court may exempt the exhaustion of administrative remedies when "such remedy is inadequate or that requiring its exhaustion would cause irreparable harm to the petitioner ... or when a substantive violation of constitutional rights is alleged, or when it is useless to exhaust the administrative remedies due to an excessive delay in the procedures...." *Esso I,* 389 F.3d at 223. The issue in *Esso I* was, whether Esso should continue submitted to a biased administrative proceeding, as a final decision had not been issued by the agency, hence, Esso was impaired to request judicial review under 3 L.P.R.A. § 2172. The Court made reference to the Puerto Rico Supreme Court opinion of *Oficina de la Procuradora del Paciente v. Aseguradora MCS, IPA 603, MCS Health Management Options, Inc.,* 163 D.P.R. 21 (2004).[8] The First Circuit Court held in *Esso I,* 389 F.3d at 224 that:

> Because we must accept the Puerto Rico Supreme Court's interpretation of Puerto Rico law, we conclude that § 2172 does not bar *Esso* from seeking interlocutory review of its due process claim. *See Johnson v. Fankell,* 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither [the United States Supreme] Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."); *Salemme v. Ristaino,* 587 F.2d 81, 87 (1st Cir.1978) ("It is well settled that the interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts.") Although the *MCS Insurer* court did not explain precisely what magnitude of constitutional violation would suffice to excuse § 2172's finality requirement, Esso's claim might well meet the standard.

The Court further held in *Esso I* that:

> The district court acknowledged that "it is unclear how far the EQB would entertain Esso's constitutional objections." However, Esso now has the option of seeking interlocutory judicial review of its due process claim under the rule announced in *MCS Insurer.* That avenue for timely judicial review of Esso's constitutional grievance in state court obviates the need for federal intervention in this case pursuant to the *Gibson* [*Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) ] exception to *Younger* abstention. The district court's decision to abstain from enjoining ongoing state administrative proceedings was thus correct.

*Esso I,* 389 F.3d at 224–225.

■ Generally, the Supreme Court of Puerto Rico nor the Secretary of Justice can deprive a person of his equitable [injunctive relief] and/or damages claims under 42 U.S.C. § 1983, by requiring the exhaustion of state administrative remedies before the filing of a § 1983 federal claim. *See Patsy,* 457 U.S. 496, 102 S.Ct.

---

**8.** The Court notes that there is no official translation of the *MCS* opinion, as of this date. Thus, any reference made to the holding of the Puerto Rico Supreme Court will be our own unofficial translation.

2557, *Roth,* 408 U.S. 564, 92 S.Ct. 2701. *Santana v. Calderón,* 342 F.3d at 23–24; *Báez–Cruz v. Municipality of Comerío,* 140 F.3d 24; *De Salas v. Burgos,* 595 F.2d at 84.

Notwithstanding, in the instant case, it is uncontested that plaintiffs **voluntarily** consented to an administrative hearing, and submitted themselves to an inquiry headed by the designated examiner. *See* Docket No. 58.[9] It is also uncontested that upon the conclusion of the administrative hearing, the designated examiner would render a report to the Governor, which has been rendered. *See* Docket No. 58. Lastly, it is uncontested that the examiner indeed rendered a report upon the conclusion of the administrative hearing, and the Governor, after considering the report, permanently removed plaintiffs as members of the BME, effective upon notice of termination, that is, May 9, 2008. *See* Docket No. 58. The Puerto Rico law clearly provides that plaintiffs are entitled to judicial review from the Governor's final determination, a remedy available under 3 L.P.R.A. § 2172. Moreover, on May 15, 2008, the Puerto Rico Senate confirmed, on an expedited basis, the appointments of new members to the BME, in order to avoid an interruption in the functions of the BME. *See* Docket No. 59.

It is clear that plaintiffs' state law proceedings are far from over, as they may appeal to the Puerto Rico Court of Appeals and the Puerto Rico Supreme Court, pursuant to the provisions of 3 L.P.R.A. § 2172. Both state *forums* have jurisdiction to entertain any alleged violation of federal constitutional rights. Certainly, this Court's intervention will be improper at this stage of the proceedings, as *Younger*'s abstention is clearly mandated by our Circuit, as stated in *Esso I,* 389 F.3d 212. "The underlying principle of the court-made *Younger* abstention doctrine is rooted in a sense of comity and respect for those state proceedings already in progress." 522 F.3d at 145. "Thus, *Younger,* precludes a litigant in a state administrative proceeding from circumventing review by a state court in favor of federal relief. There is no requirement, however, that a litigant file a new, independent claim in state court prior to obtaining federal relief." *Id.*

The Court is mindful that *Esso II* provides a potential remedy applicable to the case at bar, which is premature at this time, as the instant case is still pending in local appellate courts. Hence, abstention under the *Younger* doctrine is mandatory at this stage of the proceedings. *See Esso I,* 389 F.3d 212. But *see also Esso II,* 522 F.3d at 143, 147–148 (allowing return to federal court after exhaustion of state remedies limited to causes of "structural bias;" bad faith; harassment or other extraordinary limited constitutional "core" matters).

In *Esso II,* plaintiff returned to federal court and renewed its request for injunctive relief after having exhausted the state administrative remedies, and being denied the relief requested in local appellate courts. When determining whether Esso's return to federal court was warranted, the Court in *Esso II* took into consideration

---

**9.** The Court notes that no reservation of federal rights was made before litigating the case in the state administrative *forum* pursuant to *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 420–422, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The reservation must be made first in federal court and then proceed to state court litigating exclusively state statutory and/or constitutional remedies; plaintiff advising the local court afterwards that federal remedies have been reserved to be litigated in federal court. Notwithstanding, it appears that there is no loss of federal rights as to "structural bias" as set forth in *Esso II,* 522 F.3d at 146–148.

the following factors: (a) the pressure on the examiner exercised by the Puerto Rico Legislature, and we add, other governmental entities ["[t]he claim of bias is further substantiated by evidence that the Puerto Rico Senate improperly exerted pressure on the EQB with respect to the assessment of this penalty against Esso," *Esso II*, 522 F.3d at 148], [the inquiry is whether in the instant case a similar governmental pressure to terminate the plaintiffs herein was exercised by the Legislature and/or other governmental entities], *Esso II, supra;* (b) the "structural bias" by the examiner as to the type of contractual arrangement provided to the examiner ["[t]he district court concluded that the contractual relationship between the EQB and the Hearing Examiners receive assignments and because of the particularities within the pay structure" *Esso II*, 522 F.3d at 147]; and (c) the exorbitant fine imposed by the examiner (not applicable in the instant case). However, in *Esso II*, 522 F.3d at 143, the Court after the finding of exhaustion of state remedies focused on "core constitutional values ... threatened during ongoing state proceedings, based on the "structural" pressure exercised on the examiner by governmental entities, as well as the particulars of the contract arrangement of the examiner, all containing potential "structural bias." *See Esso II*, 522 F.3d at 147.

### D. Injunctive Relief.

Plaintiffs' original request for injunctive relief failed to include any damages, hence, a second amended injunctive request was filed claiming damages, as to their reputation. Plaintiffs insist that they are suffering irreparable harm, however, the Court notes that plaintiffs have consistently failed to plead in detail the irreparable harm suffered, other than the possible harm to their reputation, which was pled in the second amended injunctive relief. The Court further notes that plaintiffs' role as members of the BME were rendered on a voluntary basis, as they did not receive any monetary compensation for their services. Plaintiffs also knew since the date of their appointment, that they were to serve at the will of the Governor, and that any violation to 20 L.P.R.A. §§ 31 *et seq.* may entail their removal, *albeit* for just cause, at any time. *See Humphrey's*, 295 U.S. at 631–632, 55 S.Ct. 869.

Based on these premises, the Court finds, at this time, that plaintiffs have failed to meet the "quadripartite test" that may warrant the issuance of an injunctive relief, as set forth in *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 5 (1st Cir. 1991). The four factors are: "(1) the likelihood of success on the merits; (2) the potential for irreparable injury; (3) a balancing of the relevant equities [of the parties]; and (4) the effect on the public interest of a grant or denial of the restrainer." *Id.* at page 5. It is well settled that "the *sine qua non* of this four-part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in the quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1, 8 (1st Cir.2002). Hence, the injunctive relief sought by plaintiffs is hereby denied, *albeit* without prejudice, as plaintiffs failed to meet the procedural requirements of an injunctive relief.[10] *See also Esso I*, 389 F.3d 212, and *Esso II*, 522 F.3d 136.

---

10. Plaintiffs may potentially return to federal court should the circumstances of *Esso II* described above create an avenue of returning to federal court relating to federal jurisdiction. *See Esso II*, 522 F.3d 136.

## Conclusion

For the reasons stated above, plaintiffs' *Second Request For A Temporary Restraining Order, Injunctive Relief And Memorandum In Support Thereof* (Docket No. 45), and the *Motion Requesting Issuance Of A Temporary Restraining Order* (Docket No. 56) are hereby denied under *Younger* abstention, *albeit* without prejudice. The Court shall abstain under the doctrine of *Younger* abstention, but dismisses without prejudice subject to potential return to this Court to examine federal protected core constitutional values, "extreme bias" [11] or "structural bias," *Esso II,* 522 F.3d at 143, and also requiring the *sine qua non* of a showing of irreparable harm that is "great and immediate," *Maymó–Meléndez,* 364 F.3d at 37, cited in *Esso II,* 522 F.3d at 143.

Reaching the threshold of "structural bias" and/or "extreme bias" is not necessarily easily achieved. But a violation of a federally "core" protected constitutional right accompanied by a showing of irreparable damage, all under *Esso II,* 522 F.3d at 143–148, cannot *a priori* be discarded not to occur. The instant case is therefore dismissed without prejudice. Judgment will be entered accordingly.

IT IS SO ORDERED.

---

11. The threshold of personal "extreme bias" constitutes a steep mountain climb that is not easily achieved since the same requires "completely rendering the state adjudicator incompetent." *Esso II,* 522 F.3d at 143, citing *Gibson v. Berryhill,* 411 U.S. at 577, 93 S.Ct. 1689 (recognizing Gibson's bias in an "exceptional circumstance" authorizing discontinuance of *Younger* abstention). The Court also does not understate the requirement of "great and immediate" irreparable harm to be satisfied by plaintiffs in the potential return to this Court.