**Lilliam Davila FELICIANO,**
Plaintiff(s),

v.

**PUERTO RICO STATE INSURANCE FUND, et. al., Defendant(s).**

**Civil No. 11–1012 (DRD).**

United States District Court,
D. Puerto Rico.

Oct. 13, 2011.

Bamily Lopez–Ortiz, Lopez Toro, Law and Notary Offices, San Juan, PR, for Plaintiff.

Joanna B. Matos–Hicks, Jose F. Benitez–Mier, O'Neill & Borges, Yadhira Ramirez–Toro, Department of Justice, San Juan, PR, Pedro R. Vazquez, III, Pedro R. Vazquez Law Office, Guaynabo, PR, for Defendants.

### AMENDED OPINION AND ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

Pending before the court is Defendant Vanessa Jiménez Cuevas' Rule 12(b)(6) Motion to Dismiss the Complaint ("motion to dismiss"), Docket No. 10, and plaintiff's opposition, Docket No. 17. For the reasons set forth below, the motion to dismiss filed by defendant Vanessa Jiménez Cuevas ("Jiménez"), is **GRANTED**.

#### Facts and Procedural Background

On January 7, 2011, plaintiff Lilliam Dávila Feliciano ("Dávila" or "plaintiff") filed suit against the Puerto Rico State Insurance Fund ("PR–SIF"); Zoimé Alvarez Rubio, Saul Rivera Rivera, Vanessa Jiménez Cuevas ("Jiménez" or "defendant"), Jane Doe and John Roe, still unknown alleged defendants conspirators, all in their individual and official capacities. Dávila alleges that she has been deprived of her rights of free speech and free association, in violation of sections 1983, 1985 and 1986 of the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, 1986, Docket No. 1. Plaintiff also seeks compensatory and punitive damages under the supplemental causes of action, Puerto Rico Law No. 100 of June 30, 1959 ("Law 100"), as amended, including the double damages' provision, for political discrimination, and the general tort law for direct and vicarious liability, Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141–5142.[1]

---

1. The court notes that this is not the first time that Plaintiff Lilliam Dávila Feliciano files an employment discrimination action against the PR–SIF. On May 4, 2009, Davila filed Civil No. 09–1405(FAB). This is a Title VII action under the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, the Equal Pay of 1963, as amended on January 29, 2009, 29 U.S.C. § 206(d), and section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, for the alleged deprivation of the plaintiff's right of free speech and association protected by the Constitution of the United States of America (Docket 1, ¶ 1.1).

On February 28, 2011, Jiménez filed a motion to dismiss, Docket No. 10, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Jiménez asserts that she is protected by absolute immunity, as she was the hearing examiner that presided the administrative proceeding requested by Dávila at the PR–SIF.

Defendant Jiménez is an attorney and was designated by Zoimé Alvarez Rubio, Administrator of the PR–SIF and co-defendant, herein, as the official examiner to conduct administrative hearings of all managerial employees of the PR–SIF. Hence, Jiménez moves the court to dismiss the instant complaint, with prejudice, on the grounds of absolute immunity and qualified immunity based on her quasi-judicial position as official examiner of an administrative hearing.

On March 25, 2011, Dávila opposed Jiménez' dismissal request under Rule 12(b)(6), Docket No.17. Plaintiff argues that the complaint does survive the *Iqbal* and *Twombly* standard of review of a motion to dismiss under Rule 12(b)(6). Plaintiff requests that Jiménez motion to dismiss be granted solely on the Conspiracy Claim and denied as to all other claims. *See* Docket No. 17, p. 12.

Plaintiff Dávila further alleges that Jiménez together with the known and still unknown defendants have devised a scheme to remove and/or terminate from employment all personnel appointed in the PR–SIF during the years of the PDP administration from January 1, 2001 until December 21 2008. *See* Docket No. 1, ¶ 2.9.

During the year 2002, Dávila was temporarily assigned to the position of Administrative Officer I, in which she collaborated in the development of the newly created Corporate Security Area. This position was posted in an internal job announcement as a career position for which the plaintiff applied. On October 16, 2003, Dávila was appointed to a career position as Administrative Officer II. Due to PR–SIF steps by merits norm, Dávila was subsequently reclassified to the position of Administrative Officer III, effective January 13, 2006. *See* Docket No. 1, ¶¶ 4.7, 4.8, 4.9.

On May 4, 2009, plaintiff filed a federal complaint, *Lilliam Dávila–Feliciano v. Puerto Rico State Insurance Fund Corporation, et als.*, Civil No. 09–1405(FAB). In said complaint the plaintiff affirmatively alleged that she was a member of the Popular Democratic Party ("PDP"), and had been discriminated by a different faction of the same political party. During the time of filing and litigation of the federal complaint defendants, Zoime Alvarez Rubio ("Alvarez") and Saul Rivera Rivera ("Rivera Rivera") held the same positions as Administrator of the PR–SIF and Associate Director for the Human Resources within the PR–SIF, respectively.

On January 8, 2010, Alvarez Rubio notified plaintiff by letter of the intention of declaring her managerial position legally null. The legal basis for the declaration of nullity was alleged to be a lack of "technical analysis" to justify the exclusion of the Administrative Officer I position from the

---

The record further shows that, on December 16, 2010, Civil No. 09–1405(FAB) was dismissed with prejudice as to all federal claims related to employment discrimination on several grounds, and without prejudice as to the state law claims. Hence, plaintiff Dávila is now collaterally estopped from raising causes of action that were included in Civil No. 09–

1405(FAB), or that stemmed from the same set of facts, and could have been included in Civil No. 09–1405(FAB). Plaintiff Dávila took an appeal on March 22, 2011, and the matter is now pending before the United States Circuit Court for the First Circuit ("First Circuit").

regular procedure of an open job announcement. The notice further indicated that this conclusion was reached after multiple audits regarding personnel transactions that took place during the period of January 1, 2001 until December 31, 2008. Alvarez Rubio also informed Dávila of her "right to request an informal administrative hearing prior to receiving the Administrator's final decision." Docket No. 1, ¶ 4.16. Dávila requested an administrative hearing, which was set for March 5, 2010, Docket No. 1, ¶ 4.18. However, upon Dávila's attorney's request, plaintiff appeared in writing in lieu of the administrative hearing, on March 19, 2010. *See* Docket No. 1, ¶¶ 4.19, 4.20.

Plaintiff Dávila alleged in her written appearance that Article 14 of the Personnel Regulations did not require the "technical analysis" to which Alvarez Rubio alleges. Consequently, Dávila alleges that Alvarez Rubio's insistence on additional requirements is used as a pretext for discrimination.

Defendant Jiménez, the designated official Examiner, issued a report which was received by the Human Resources Area on April 5, 2010. The report sustained that the PR–SIF's decision was based upon Articles 13, Section 13.2 and Article 14, Section 14.1 of the Personnel Regulations. Alvarez Rubio issued a letter on the same date, but notified to Dávila on April 9, 2010, informing plaintiff that her managerial position had been declared null based on the official examiner's Report. Dávila was immediately reinstated to her previous career position in Finances on the same day she received the letter. *See* Docket No. 1, ¶¶ 4.29, 4.30.

The Court notes that Dávila is still working at the PR–SIF, and that she holds a career position. Furthermore, Dávila filed an administrative appeal with the Board of Appeals for Managerial Employees of the PR–SIF, Case No. JA–10–29, which is still pending, Docket 1, ¶ 4.34.

### Applicable Law and Discussion

### Failure to state a Claim Under Rule 12(b)(6).

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") provides that a complaint will be dismissed for "failure to state a claim upon which relief can be granted." "So, when the allegations in a complaint, however true, fall short of a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" (Citations omitted). *Bell Atlantic Corporation, et al. v. Twombly, et al.,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In *Twombly,* 550 U.S. at 555 and 570, 127 S.Ct. 1955, the Court held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... (citations omitted) ... a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). **Factual allegations must be enough to raise a right to relief above the speculative level,** *see* 5 C. Wright & Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004).
>
> ...
>
> Here, in contrast, we do not require heightened fact pleading of specifics, **but only enough facts to state a claim to relief that is plausible on its face.** Because the plaintiffs here have not

nudged their claims across the line from **conceivable to plausible,** their complaint must be dismissed. (Emphasis ours).

*See also Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("Specific facts are not necessary; the **statements need only 'give the defendants fair notice of what the ... claim is and the grounds upon which it rests'** ") (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955) (emphasis ours).

In *Twombly,* 550 U.S. at 562–563, 127 S.Ct. 1955, the Court further held:

We could go on, but there is no need to pile up further citations to show that *Conley's* **"no set of facts" language** has been questioned, criticized, and explained away long enough. To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. **But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement.** (Emphasis ours).

Thus, the new standard under *Twombly* is that a claim for relief must contain allegations that "are plausible on its face." See also *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Sepúlveda–Villarini v. Department of Education of Puerto Rico,* 628 F.3d 25, 29 (1st Cir.2010), J. SOUTER, as Associate Justice (Ret)., the Court held:

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Fed.R.Civ.P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The make-or-break standard, as the district court recognized, is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950–51, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955); see also *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (footnote and citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. **The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."** *Id.* at 1949 (citations omitted). (Emphasis ours).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 129 S.Ct. 1937. First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal,* 129 S.Ct. 1937) (internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based

upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.* Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009).

A complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596. will likely not survive a motion to dismiss. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset,* 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596.

### Absolute Immunity.

Defendant Jiménez claims absolute immunity as to all claims pled in the Complaint. Hence, the first step is to determine whether Jiménez is entitled to absolute immunity.[2]

Reference is made to the applicable provisions under Puerto Rico law pertaining to immunity for quasi-judicial officers. *See* Docket No. 10, p. 9.

Procedurally, the Commonwealth of Puerto Rico's Uniform Administrative Procedures Act ("U–APA") provides that

Every agency may designate examining officials, who shall not necessarily be attorneys, to preside over the adjudicatory procedures that are held there, especially when the procedure in question is informal. The head of the agency may delegate adjudicatory authority to one or more officials or employees of his agency. These officials or employees shall be designated by the title of administrative judges. [3 L.P.R.A. § 2153].

. . .

Once such adjudicatory procedure is set into action a final order or resolution shall be issued in writing within 90 days after the conclusion of the hearing or after the filing of the proposed findings of fact and conclusions of law. [3 L.P.R.A. § 2164].

In *Butz v. Economou,* 438 U.S. 478, 508, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court held that, some officials "special functions require a full exemption from liability". Judges are entitled to absolute immunity from lawsuits even when they are accused of deciding the case due to improper motives. *Id.* at 508–509, 98 S.Ct. 2894. This exemption from liability is because of the "special nature" of their responsibilities not because of their particular location within the government. *Butz, supra* at 511, 98 S.Ct. 2894.

---

**2.** The Court notes that the PR–SIF's Administrator is the authorized person to appoint the examiners. However, said appointment is made pursuant to the above cited statute of the Puerto Rico Uniform Administrative Procedures Act, 3 L.P.R.A. § 2153.

■ Absolute immunity has been extended to individuals that are "closely associated with judicial process," *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) and *Bettencourt v. Board of Registration in Medicine of the Commonwealth of Massachusetts,* 904 F.2d 772, 783–85 (1st Cir.1990). "The absolute immunity of a judge applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Cleavinger v. Saxner,* 474 U.S. at 199–202 [106 S.Ct. 496] (reviewing doctrine of quasi-judicial immunity); *Scott v. Central Maine Power Co.,* 709 F.Supp. 1176, 1181–84 (D.Me.1989) (same)." *See* Docket No. 10, p. 10.

Thus, official examiners or administrative judges could be afforded absolute immunity in order to exempt them from liability. The Court refers to the test set by *Bettencourt,* 904 F.2d at 783, citing *Butz,* 438 U.S. at 510–513, 98 S.Ct. 2894; *Austin Mun. Securities v. Nat. Ass'n of Securities,* 757 F.2d 676, 688 (5th Cir.1985); *Simons v. Bellinger,* 643 F.2d 774, 778 (D.C.Cir.1980):

> First, does [the officer], like a judge, perform a traditional 'adjudicatory' function, in that he decides facts, applies law, and otherwise resolves disputes in the merits (free from direct political influence)? Second, does [the officer], like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does [the officer], like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect a physician's constitutional rights?

Hence, to determine whether absolute immunity should be afforded to the agency officials' role, the Court first must consider whether Jiménez performed an "adjudicatory function" wherein she decided facts, applied law, and resolve disputes on the merits (free from political influence). Second, the court must determine if the case decided by the Defendant, as a designated official examiner is "sufficiently controversial" that the absence of absolute immunity would subject her to numerous damages action. Lastly, we must determine whether the official examiner, like a judge, "adjudicate disputes against a backdrop of multiple safeguards designed to protect an SIF employee constitutional rights." *Id.* at 783.

First, we conclude that the official examiner performed traditional adjudicatory functions. The law that creates the PR–SIF Corp., which is known as the Compensation System for Work–Related Accidents Act[3], 11 L.P.R.A. § 1–42, requires that the agency comply with the requirements of the Uniform Administrative Act, 3 L.P.R.A. §§ 2101 *et seq.*[4] Thus, the PR–SIF is statutorily authorized to designate official examiners to conduct administrative hearings. Like a judge, official examiners that preside over the adjudicatory procedure decides facts, apply laws, and resolve disputes on the merits. 3 L.P.R.A. § 2164.

In the instant case, Jiménez in her official capacity as hearing examiner, issued a report wherein she made findings of facts and conclusions of law leading to a determination of an administrative dispute between Dávila and the PR–SIF. Therefore, the first requirement of the functional analysis is met. *Bettencourt,*

---

**3.** In Spanish, this statute is known as "Ley del sistema de compensaciones por accidents del trabajo," Ley Núm. 45 de 19 de abril de 1935, segun enmendada.

**4.** In Spanish, this statute is known as "Ley de Procedimientos Administrativos Uniforme" ("L.P.A.U.").

904 F.2d at 783. Hence, the Court must now determine if the case decided by Jiménez is "sufficiently controversial" that the no application of absolute immunity would expose Jiménez to numerous damages actions. Although official examiners decisions do not constitute the agencies final determination, the PR–SIF administration must give "substantial deference" to the hearing officer's credibility determinations, *see Morris v. Board of Registration*, 405 Mass. 103, 111, 539 N.E.2d 50 (1989). Notwithstanding, the Agency is free to "reverse or reject" the findings of a hearing officer on conflicting evidence. *Id.*

The instant case is clearly controversial, after all, declaring a managerial position "null" is likely to fuel a potential litigious reaction from the employee. Hence, there is a need for absolute immunity to "insulate officials performing quasi-judicial functions from liability for alleged unconstitutional acts". *Butz*, 438 U.S. at 507, 98 S.Ct. 2894. By granting absolute immunity to the official examiners of the administrative agencies will ensure that their quasi-judicial functions will be performed without harassment or intimidation. *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

Finally, we must determine whether the official examiner, like a judge, "adjudicate disputes against a backdrop of multiple safeguards designed to protect an SIF employee constitutional rights." *Bettencourt*, 904 F.2d at 783. Such safeguards will "enhance the reliability of information and the impartiality of the decision-making process ..." *Butz*, 438 U.S. at 512, 98 S.Ct. 2894. In the *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)[5] the Supreme

Court held that an essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing ..." "before he is deprived of any significant property interest" ... This principle requires "some kind of hearing" prior to the discharge. *Id.* at 542–543, 105 S.Ct. 1487.

■ In these types of cases, the principle of due process only finds the need for some form of pre-termination hearing. The objective should be to find a balance between the competing interests at stake, to wit, the private interest of the employee in retaining employment, as well as the government interest in the expeditious removal of unsatisfactory employees, the avoidance of administrative burdens, and the risk of an erroneous termination. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Under the *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, the Court held that the employee is entitled to: (1) oral or written notice of the administrative charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity to present his side of the story. *Id.* at 546, 105 S.Ct. 1487. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest of an expeditious removal of an unsatisfactory employee.

In *Chmielinski v. Massachusetts*, 513 F.3d 309, 316–318 (1st Cir.2008), the First Circuit held:

The Supreme Court made clear in *Loudermill* that when an employee is entitled to some process after termination, the purpose of the termination hearing is solely to serve as **"an initial check**

---

**5.** In *Loudermill* a terminated school district employee brought action against the Cleveland Board of Education. The Board dismissed him for dishonesty when filling out the job application. The Supreme Court held that there should be a balance between the state interest and the injured party.

against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." 470 U.S. at 545–546, 105 S.Ct. 1487.

. . .

We do not think the issue of bias can be addressed with an abstract broad statement that the due process standard of *Loudermill* either always or never requires that the hearing officer be unbiased. There is, to start, a distinction between impartiality and degrees of bias. We have held that there is no requirement that the hearing officer be impartial; indeed, the terminating employer may preside. *Acosta–Sepúlveda v. Hernández–Purcell,* 889 F.2d 9, 12 (1st Cir.1989). We have also held that there need not be a formal hearing at all. *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 44 (1st Cir.1988). But that impartiality is not demanded does not itself determine whether bias can be so severe as to interfere with due process at the hearing itself.

A key concern in *Loudermill* was that the employee have an opportunity to present his side of things to correct errors of fact on which the termination decision is based. *See Loudermill,* 470 U.S. at 545–546, 105 S.Ct. 1487. (Emphasis ours).

In *Marrero–Gutiérrez v. Molina, et al.,* 491 F.3d 1, 8 (1st Cir.2007), the First Circuit held:

Due process requires only that the pretermination hearing fulfill the purpose of "an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Cepero–Rivera v. Fagundo,* 414 F.3d 124, 135 (1st Cir. 2005) (citing *Cleveland Bd. Of Educ. v.*

*Loudermill,* 470 U.S. 532, 545–546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). This initial check requires the employee to receive notice of the charges, an explanation of the evidence that supports those charges, and the ability to refute that evidence. *See id.* at 134. Any standard that would require more process than this would unduly impede the government in removing poorly performing employees. *See id.* (Emphasis ours).

*See also Aguiar–Carrasquillo v. Agosto–Alicea,* 445 F.3d 19 (1st Cir.2006); *Cepero–Rivera v. Fagundo,* 414 F.3d 124 (1st Cir. 2005).

In the instant case, the Court finds that Dávila was adequately notified by letter dated January 8, 2010 of the intention of declaring legally null Plaintiff's appointment of October 16, 2003 to the managerial position. Docket 1, ¶ 4.13. The letter provided a legal basis for the alleged legal nullity of appointment. Docket 1, ¶ 4.14. This notification sufficiently satisfies the plaintiff's due process. Furthermore, as to the third prong, the letter given to the Plaintiff by Alvarez Rubio (Defendant/PR–SIF Administrator) advised Plaintiff of her right to request an informal administrative hearing prior to receiving the Administrator's final decision. Docket 1, ¶ 4.17. The Complaint alleges that, on January 22, 2010, Dávila requested the informal administrative hearing. However, Dávila decided to appear in writing instead, as her attorney had a calendar conflict. *See* Docket No. 1, ¶¶ 4.17–4.20.

Defendant Jiménez issued a report that sustained Alvarez Rubio's decision of declaring the Dávila's managerial position as an Administrative Officer III, legally null. Based solely on the allegations of the Complaint, the Court finds that the *Loudermill* factors were satisfied. Dávila's interest of retaining her employment, and PR–SIF

alleged interest in removing Dávila from the position were adequately balanced in the present case. The Court notes, however, that Dávila appealed the examiner's determination, and said appeal is still pending. *See* Docket No. 1, ¶ 4.30.

In view of the foregoing, the Court finds that Defendant Jiménez is entitled to absolute immunity, as she is was duly appointed by the PR–SIF as an official examiner to perform quasi-judicial judgment on the evidence before her, free from pressures by the parties or other officials within the agency. *Butz*, 438 U.S. 478, 479, 98 S.Ct. 2894 (1978).

█ The scope of protection by absolute immunity falls "within the outer perimeter" of the official examiners "line of duty" and should be read fairly expansively. *Ricci v. Key Bancshares of Me., Inc.*, 768 F.2d 456, 462 (1st Cir.1985) The Defendant judge is immune from suit if at the time of the action the judge had subject matter jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359, 98 S.Ct. 1099. The Defendant in her quasi-judicial functions as official examiner of PR–SIF had jurisdiction to hold an informal hearing and issue a report therefore entitling her to immunity. *See Stump*, 435 U.S. at 359, 98 S.Ct. 1099.[6]

### Plaintiff's Claims under 42 U.S.C. §§ 1983, 1985 and 1986.

Plaintiff Dávila claims that Defendant Jiménez along with the other co-defendant's, manipulated the interpretation of the legal requirements for an internal job announcement and conducted a deceptive pre-termination process which violated Plaintiffs due process of law under the Constitution of the United States, Docket 1, ¶¶ 5.8–5.9. Additionally, Dávila alleges that Jiménez violated her rights of equal protection of the law by discriminated against her for being a member of the PDP, which is the alleged opposing political party of the defendants. Finally, Plaintiff claims that Defendant Jiménez neglected or refused to prevent the violation of Plaintiff's constitutional rights by the co-defendants (Docket 1, ¶ 8.3).

Plaintiff Davila brings this civil rights action pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

█ This section provides a procedural mechanism for enforcing federal constitutional or statutory rights. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). A section 1983 plaintiff must identify the particular feder-

---

**6.** In the instant case, the Court has dismissed the request as to the examiner under absolute immunity, which is the only issue that the parties challenged. However, as the Court is abstaining under *Younger* abstention, see *in-* *fra*, without prejudice, the Court [invites] the parties to discuss the issue of "structural bias" and/or "extreme bias" under *Esso Standard Oil Co. v. López–Freytes, et al.*, 522 F.3d 136 (1st Cir.2008).

al right that he seeks to enforce via judicial proceedings. In order to prevail in a section 1983 claim, a plaintiff must demonstrate that the defendant: (1) acted under color of state law, and (2) deprived him of the identified federal right. *See Cepero–Rivera v. Fagundo,* 414 F.3d 124, 129 (1st Cir.2005) (quoting *Romero–Barcelo v. Hernandez–Agosto,* 75 F.3d 23, 32 (1st Cir. 1996)).

■ A defendant incurs section 1983 liability **only** if he was personally involved in the deprivation of rights asserted by a plaintiff; a defendant may be found liable only on the basis of his own acts or omissions. *Id., see also Rosado De Velez v. Zayas,* 328 F.Supp.2d 202, 209 (D.P.R. 2004). Once the plaintiff satisfies his *prima facie* burden, the defendant must show that he would have taken the same action regardless of the plaintiff's political affiliation and that he would have taken such action for constitutional reasons. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 286–87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

### The Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." *U.S. Const. amend. XIV, § 1.* A plaintiff asserting a procedural due process claim must show that he had a property interest as defined by state law and that the defendant, acting under color of state law, deprived him of that property interest without constitutionally adequate process. *See Mercado–Alicea v. P.R. Tourism Co.,* 396 F.3d 46, 53 (1st Cir.2005).

■ In order to establish a procedural due process claim under Section 1983, a plaintiff "must allege **first** that it has a property interest as defined by state law and, **second,** that the defendants, acting under color of state law, deprived it of

that property interest without constitutionally adequate process." *Marrero–Gutierrez,* 491 F.3d 1, 8 (1st Cir.2007) (citing *PFZ Props., Inc. v. Rodriguez,* 928 F.2d 28, 30 (1st Cir.1991)). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. at 541, 105 S.Ct. 1487; *Galloza v. Foy,* 389 F.3d 26, 33 (1st Cir.2004). These employees have a right to at least an informal hearing before they are discharged. *See Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169, 1173 (1st Cir.1988).

■ The First Circuit has stated that "to establish a constitutionally protected property interest in employment, a plaintiff must demonstrate that she has a legally-recognized expectation that she will retain her position." *Santana v. Calderón,* 342 F.3d 18, 24 (1st Cir.2003). "A legitimate expectation of continued employment may derive from a statute, a contract, or an officially sanctioned rule of the workplace." *Id.* As the First Circuit has established "under the laws of Puerto Rico, career or tenured employees have property rights in their continued employment." *González–De–Blasini v. Family Dept.,* 377 F.3d 81, 86 (1st Cir.2004).

■ In the instant case, Dávila clearly has a property interest in her employment. The position that brings about the instant case is a managerial position to which the plaintiff had been appointed to on October 16, 2003, through an internal job announcement procedure. Since, under Puerto Rico law, public employees with career positions have a constitutionally protected property interest in their employment and benefits the Plaintiff has a right to an informal hearing which she was

granted. *Costa–Urena v. Milton Segarra,* 590 F.3d 18 (1st Circuit 2009).[7]

On the other hand, it is unknown at this time, as plaintiff has engaged the administrative wheels, whether or not plaintiff's appointment was made pursuant to all the requirements of the law or was made short of the threshold causing a null appointment pursuant to *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169 (1st Cir.1988). Defendant Jiménez was appointed as the official examiner to preside the informal hearing. Thus, the defendants acting under state color did not deprive the Plaintiff's property interest without constitutionally adequate due process. For this reason the Plaintiff's allegations lack merit and are dismissed.

### Equal Protection of the Law

 The First Amendment protects a government employee who does not occupy a trust or policy-making position from adverse employment actions based upon the employee's **political** affiliation. *See Peguero–Moronta v. Santiago,* 464 F.3d 29, 45 (1st Cir.2006), *Marrero–Gutierrez v. Molina,* 491 F.3d at 9. To establish a prima facie case of **political discrimination** in violation of the First Amendment, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action. *Id.* The plaintiff must demonstrate with direct or circumstantial evidence, that he engaged in constitutionally protected conduct. *Id.*

 Defendant Jiménez, claims that plaintiff's allegations are not "enough to raise a right to relief above the speculative level" in accordance with the plausibility standard established in *Bell Atlantic v. Twombly,* 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), further elab-

orated upon in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Defendant further aver that the complaint fails to satisfy the elements of a prima facie case set forth in *Martínez–Vélez v. Rey–Hernández,* 506 F.3d 32, 39 (1st Cir.2007), which requires for purposes of Fed.R.Civ.P. 8(a)(2), a plaintiff must properly plead that: (1) plaintiff and defendant belong to opposing **political** affiliations, (2) defendant have knowledge of plaintiff's affiliation, (3) a challenged employment action occurred, and (4) **political** affiliation was a substantial or motivating factor behind it. "While plaintiffs are not held to higher pleading standards in § 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." *Marrero–Gutierrez,* 491 F.3d at 9.

 In the instant case, Dávila, does not satisfy the first prong just as she does not even state the Defendants political affiliation. Furthermore, the Plaintiff dose not provide concrete facts that the Defendant had knowledge of the Plaintiff's affiliation. Although a challenged employment action occurred and the Defendant was the designated official examiner, no factual statements were pleaded for us to draw a *plausible* inference that the Defendants political affiliation was a motivating factor. Stripped of these unsupported conclusions of law which are masqueraded as factual allegations, Dávila's claim lacks facial plausibility. It provides no concrete facts that show or would allow this Court to reasonably infer that political affiliation was a substantial or motivating factor in declaring her managerial position "legally null." The Plaintiff's allegations as to the causal connection between the PR–SIF administrators political affiliation and her subse-

7. Puerto Rico agency employees who were terminated from their career positions and their spouses brought § 1983 action against employer and various officials, alleging viola-
tions of the First Amendment and the Due Process Clause. *Costa–Urena v. Segarra,* 590 F.3d 18 (1st Cir.2009).

quent designation of Defendant Jiménez as official examiner simply do not meet the plausibility standard set forth in *Twombly, supra,* at 570, 127 S.Ct. 1955 and clarified in *Iqbal, supra,* at 1944.

## A Final Note

The record shows that Dávila requested an informal administrative hearing on January 22, 2010, Docket No. 1, ¶ 4.18. Plaintiff Dávila later appeared in writing through a letter dated March 19, 2010 directed to the defendant Jiménez, the designated official examiner. On April 9, 2010, Dávila was informed that her managerial position was declared null, Docket No. 1, ¶ 4.29. Subsequently, the Plaintiff filed an administrative appeal with the Board of Appeals for Managerial Employees of the PR–SIF, Case No. JA–10–29, which is still pending, Docket No. 1, ¶ 4.34.

The law that creates the PR–SIF Corp.,[8] requires that the agency comply with the requirements of the Puerto Rico Uniform Administrative Act of Puerto Rico, 3 L.P.R.A. §§ 2101, *et seq.* 11 L.P.R.A. § 1b–3 provides that:

> The Board shall have the authority and the obligation to do the following:
>
> (i) Approve the necessary regulations to put into effect the provisions of this chapter, subject to §§ 2101 et seq. of Title 3, known as the "Uniform Administrative Procedures Act." Furthermore, it shall approve rules for its organization and internal operation.

The employee categories within the Personnel System of the Commonwealth of Puerto Rico, Public Law No. 184, divides employees in two categories. These are career employees and confidential or trust employees. In the instant case Plaintiff held a career position for which this Court will consider her as a career employee. Said law defines career employees as: "those employees who have been admitted into the public service in faithful compliance with the established by the body of laws in effect and which applies to the recruitment and selection processes of the career service at the time of their appointment. Such employees are entitled to remain in the service pursuant to the provisions of § 1462e of this title." 3 L.P.R.A. § 1465, *also see Echevarria v. Acevedo Vila,* 565 F.Supp.2d 328, 336 (D.P.R.2008).

 As previously discussed *infra* regarding the Absolute Immunity and the *Loudermill* doctrines, some form of pretermination hearing must be held to satisfy the employee's due process. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Puerto Rico Uniform Administrative Procedure Act provides a procedure to safeguard governmental employees due process in the administrative forum. An employee must be provided the following guarantees prior to removal: (1) written notification of the administrative charges against the employees; (2) a brief description of the evidence in the possession of the employer to prove such charges; (3) an opportunity for the employee to state his version of the events, if he deems it convenient and appropriate, by holding an informal hearing. *Marrero Caratini v. Rodríguez Rodríguez,* 138 D.P.R. 215, 222 (1995), *Rivera Sierra v. Superintendent,* 179 D.P.R. 98 (2010). **The notification must inform the employee of his right to an informal hearing**[9]. The employee must be notified the

---

**8.** Workmen Compensation Law known in Spanish as, "Ley del sistema de compensaciones por accidentes del trabajo," Law 45 of April 19, 1935, as amended.

**9.** An "informal hearing" is known as a "pretermination hearing" applicable to career employees both under local law and federal law. *Echevarria v. Acevedo Vila,* 565 F.Supp.2d at 334 n. 4. *See also Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The *Loudermill* doctrine was adopted by the Puer-

place and date of the informal hearing. *Echevarria v. Acevedo Vila*, 565 F.Supp.2d at 334, citing *Unión Independiente de Empleados de la AEP v. AEP*, 146 D.P.R. 611, 612 (1998). The hearing should not be complex, long, or formal. *Torres Solano v. PRTC*, 127 D.P.R. 499, 527 (1990).

Career employees are encouraged to resolve any employment dispute through an informal administrative procedure within the agency. Section 2102 of UAPA provides:

> It is hereby established that the public policy of the Commonwealth is to encourage the informal solution of administrative solution of administrative issues so that formal solution of the matters submitted to the agency will be unnecessary. The agencies shall establish the rules and procedures that will allow the informal solution of the matters submitted for their consideration without impairing the rights guaranteed by this chapter.

Section 2151 governs the adjudicative proceedings. Section 2151(a) specifically provides:

> (a) When by provision of a law, rule, regulation or of this chapter, an agency must formally adjudicate a controversy; the proceedings shall be governed by this subchapter. Voluntary

procedures for dispute resolution established by law or regulation shall not be included.

. . .

The following rights shall be safeguarded in any formal adjudicatory procedure before an agency:

(A) The right to **timely notice of the charges** or complaints or claims against one of the parties.

(B) The right to **introduce evidence.**

(C) The right to an **impartial adjudication.**

(D) The right to have the **decision based on the record** of the case. (Emphasis ours).[10]

The Puerto Rico Uniform Administrative Procedures Act, Section 3 L.P.R.A. § 2172 expressly states that the court may only review **final agency orders after the petitioning party has exhausted all administrative remedies.** Thus the Plaintiff is precluded from filing the complaint in the federal district court. Moreover, the administrative and state remedies provide the Plaintiff adequate opportunity to state her constitutional claims.

Section 2173 establishes as an exception, when the exhaustion of administrative remedies may be waived:

---

to Rico Supreme Court in the case of *Torres Solano v. PRTC*, 127 D.P.R. 499.

10. Additionally, this Court notes that the Uniform Administrative Procedures Act defines the scope of judicial review of administrative orders in 3 L.P.R.A. § 2172. This sections provides that:

> Any party which is adversely affected by a final order or resolution of an agency and who has exhausted all of the remedies provided by the agency ... may file a petition for review before the Circuit Court of Appeals....
>
> ....
>
> An order or interlocutory decree of an agency ... shall not be directly [reviewa-

ble]. The interlocutory decree of the agency may be subject to a writ of error in the motion to review the order or final decision of the agency.

The judicial review provided herein shall be the exclusive proceeding to review the merits of an administrative decision submitted under this chapter; whether adjudicative or informal in nature (Emphasis ours) see *Echevarria*, 565 F.Supp.2d at 337.

The Puerto Rico Court of Appeals reviews interlocutory orders of administrative agencies. *See* 4 L.P.R.A. § 22K which grants the Puerto Rico Court of Appeals authority to review administrative resolutions and orders including reviewing of its constitutional claims.

The court may exempt a petitioner from having to exhaust any or all of the administrative remedies provided in case such remedy is **inadequate** or that requiring its exhaustion would **cause irreparable harm** to the petitioner and in the balance of interests it is not justified to exhaust such remedies, or when a **substantive violation of constitutional rights is alleged,** or when it is useless to exhaust the administrative remedies due to an **excessive delay in the procedures,** or when it is a clear case of **lack of agency jurisdiction,** or when it is a strictly legal matter and **administrative expertise is unnecessary.** (Emphasis ours).

In the instant case, it is of the utmost importance the analysis made by the First Circuit in *Esso Standard Oil Co. v. López–Freytes, et al.,* 522 F.3d 136, 143 (1st Cir. 2008), as to the court's duty to abstain when plaintiff has "engaged the wheels of administrative exhaustion:"

> **In the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings.** *See, e.g., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Although initially applied to state criminal actions, the abstention doctrine has been extended to other proceedings that implicate important state interests, including the state-level, quasi-judicial, administrative proceeding at issue here. *See Maymó–Meléndez v. Alvarez–Ramírez,* 364 F.3d 27,

31 n. 3 (1st Cir.2004) (enumerating the various applications of the *Younger* doctrine). Generally, insofar as the state proceedings evince "no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex Co. Ethics Comm.,* 457 U.S. at 435, 102 S.Ct. 2515. **Extraordinary circumstances include those situations in which "core constitutional values are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate."** *Maymó–Meléndez,* 364 F.3d at 37 (internal quotation marks omitted). **Among those extraordinary circumstances are cases in which extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner.** *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). (Emphasis ours).

In *Rodríguez v. Vilá,* 565 F.Supp.2d 328, 339 (D.P.R.2008), a case similar to the case at bar, the Court held that: "[t]he doctrine of *Younger* abstention originally applied simply because the petitioner having absolute recourse to a federal claim, voluntarily engaged the wheels of state administrative procedure before filing an action in federal court."

 It is a well established general rule that federal courts should not interject themselves into ongoing state adjudications, including administrative proceedings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) [11], *Eche-*

---

11. In *Younger* a plaintiff who was defending criminal charges in state court sought to get the federal court to enjoin the ongoing state criminal proceedings, the federal court abstained. This decision was rooted in the comity between the state and the federal courts.

In *Younger,* the "interference" was the attempt to enjoin the pending state criminal proceeding from going forward. *Id.* at 53–54, 91 S.Ct. 746, also *Rio Grande Community Health Center v. Rullan,* 397 F.3d 56, 69 (1st Cir.2005).

*varria*, 565 F.Supp.2d at 338; *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 623–27, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (extending *Younger* to some state administrative proceedings). Abstention would only be adequate if the state forum provides the petitioner the opportunity to raise its federal claims. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Maymó–Meléndez v. Alvarez–Ramírez*, 364 F.3d 27, 35 (1st Cir.2004), *cert. denied*, 543 U.S. 872, 125 S.Ct. 110, 160 L.Ed.2d 120 (2004). The federal court exceptionally could interfere with the administrative proceeding only when "core constitutional values are threatened during an ongoing state proceeding and there is a showing of irreparable harm that is both great and immediate." *Id.* at 37 (internal quotation marks omitted).[12]

The Court's analysis ends here, as the Court finds that abstention is appropriate at this stage of the proceedings, as plaintiff Dávila "[h]as voluntarily engaged the wheels of administrative exhaustion." *Echevarria*, 565 F.Supp.2d at 339.

■■■ Dávila has voluntarily submitted her case through the PR–SIF administrative process. In the instant case *Younger* abstention applies, as explained in *Echevarria v. Acevedo Vila*, 565 F.Supp.2d 328 (2008), *see also Esso Standard Oil Co. v. Lopez–Freytes, et. al.*, 522 F.3d 136, 143 (1st Cir.2008).[13] Plaintiff has enjoyed the safeguards provided by the UAPA which guarantees the employee her chance to present her federal claims. *Younger* applies only when the relief asked of the federal court "interfere[s]" with the state proceedings. *See Quackenbush v. Allstate*

*Insurance*, 517 U.S. 706 at 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). *Younger's* principle is broad, interference includes when the plaintiff is seeking a declaratory judgment that a prosecution or the statute serving as its basis, is illegal or unconstitutional. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Interference is thus usually expressed as a proceeding that either enjoins the state proceeding or has the "practical effect" of doing so. *Rio Grande Community Health Center v. Rullan*, 397 F.3d. 56 (1st Cir. 2005) citing *Gilbertson v. Albright*, 381 F.3d 965, 977–78 (9th Cir.2004). This courts interference will directly impact the administrative proceedings. Considering that the fact that Dávila's administrative appeal may be dictated in her favor that would create a conflict with a decision that this Court may issue. Furthermore, a ruling in Dávila's may moot the instant action.

Plaintiff Dávila has voluntarily requested and exercised her right to the informal administrative hearing, submitting her case to be analyzed by the Defendant, designated official Examiner, Docket No. 1, ¶ 4.18. The plaintiff may still appeal to the Puerto Rico Court of Appeals and the Puerto Rico Supreme Court, pursuant to the provisions of 3 L.P.R.A. § 2172. Both state courts have jurisdiction to entertain any alleged violation of federal constitutional rights. Federal intervention is only appropriate where the petitioner also demonstrates irreparable harm. *Maymó–Meléndez*, 364 F.3d at 37–38. Plaintiff has access to state judicial review that would make federal intervention unnecessary. State judicial review is sufficient to protect her constitutional rights. *Esso Standard*

---

12. *Maymo–Melendez v. Alvarez–Ramirez*, 364 F.3d 27 (1st Cir.2004) (Court applied *Younger* principles to state administrative disciplinary proceeding of horse trainer)

13. *Esso Standard Oil Co.*, 389 F.3d at 217–18 using *Younger* to require abstention in case where environmental board brought state administrative proceedings against gasoline station owner seeking to fine it.

*Oil Company v. Esteban Mujica Cotto,* 389 F.3d 212 (2004).

■ Lastly, plaintiff Dávila is now collaterally estopped from bringing a cause of action under 42 U.S.C. §§ 1983, 1985, 1986 for alleged deprivation of Dávila's protected rights under the First Amendment, and political discrimination, provided that the factual scenario stems from the same set of facts covered by the allegations raised in the complaint filed under Civil No. 09–1405(FAB). *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In *Calderon v. CitiMortgage, Inc.,* 437 B.R. 25, 31 (D.P.R.2010), the Court held that "a party cannot play 'fast and loose with the courts' to advance its own interest, particularly if the cause of action now raised could have been raised during prior proceedings," citing *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.,* 834 F.2d 208, 212 (1st Cir.1987); *Payless Wholesale Distributors, Inc., et al.,* 989 F.2d 570, 571 (1st Cir.1993). *See also Leon v. Sanchez–Bermudez,* 332 F.Supp.2d 407 (D.P.R. 2004), *Muniz Cortes v. Intermedics,* 229 F.3d 12 (1st Cir.2000).

### Conclusion

For the reasons set forth above, **absolute immunity** is granted to the defendant Vanessa Jiménez–Cuevas, Docket No. 10, who was the designated official examiner by the Administrator of the PR–SIF to preside in Dávila's administrative hearing. Furthermore, the Court finds that it lacks jurisdiction, as plaintiff Dávila has, out of her own volition, filed an administrative proceeding prior to the filing of the instant action. Engaging the wheels of the administrative procedure means that the Court must abstain under the *Younger* doctrine. Hence, defendants' Motion de Dismiss is **GRANTED** and the complaint is hereby **DISMISSED** without prejudice. Lastly, plaintiff Dávila is collaterally estopped from bringing any cause of action that stems from the same factual scenario included in Civil No. 09–1405(FAB), as these causes of action should have been included therein, as opposed to filing a new complaint.

Judgment will be entered accordingly.

IT IS SO ORDERED.